644 A.2d 710

COMMONWEALTH of Pennsylvania, Appellee,

v.

Delores RIVERS, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1993.

Decided July 1, 1994.

398

Jack M. Myers, Philadelphia, for Delores Rivers.

Catherine Marshall, Marilyn F. Murray, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Atty. Gen.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

On March 15, 1989 a jury convicted appellant of murder in the first degree, robbery and possession of an instrument of crime.[1] The following day the same jury found sufficient evidence to establish two aggravating circumstances and no evidence of any mitigating circumstances. The penalty was fixed by the jury at death. This is a direct appeal from the judgment of the sentence of death.

 As appellant challenges the sufficiency of the evidence upon which her conviction of murder in the first degree is founded, we will begin our review with that issue.[2] In order to prove murder of the first degree the Commonwealth must

1. The specific provisions of the criminal code at issue are respectively: 18 Pa.C.S. § 2502, § 3701 and § 907.

2. We note that even if the appellant had not specifically challenged the sufficiency of the evidence this Court is mandated to perform its own independent review of the sufficiency of the evidence upon which a conviction of first degree murder is based, when the appellant has been sentenced to death. *Commonwealth v. Green,* 536 Pa. 599, 640 A.2d 1242 (1994).

show that a human being was unlawfully killed, that the accused committed the killing, and that the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell,* 528 Pa. 546, 599 A.2d 624 (1991). Specific intent to kill can be proven by the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Butler,* 446 Pa. 374, 288 A.2d 800 (1972).

The evidence of record sets forth the following scenario regarding the death of Violet Burt. Ms. Burt, a 74–year–old amputee, was last seen alive on the evening of January 29, 1988. Nathaniel Lewis, a neighbor and handy man who often did shopping and errands for Ms. Burt, was with her from 7:00 p.m. until 9:00 p.m. that evening. Mr. Lewis watched television with Ms. Burt while they made up a grocery list. When Mr. Lewis left, Ms. Burt was seated in her wheelchair at the dining room table watching television. Mr. Lewis made sure the doors were locked when he left the house. The next day, January 30, 1988, Mr. Lewis returned with Ms. Burt's groceries but received no response to his repeated knocking. At trial Mr. Lewis identified appellant as a nurse/cleaning lady whom he had seen in Ms. Burt's home prior to January 29, 1988.

Rose Bair, the daughter of Ms. Burt, testified that she went to visit her mother on the afternoon of Saturday, January 30, 1988, and discovered her mother dead, lying on the dining room floor in a pool of blood. Ms. Bair stated that her mother always kept large sums of cash in her home, ranging between five ($5,000) and seven ($7,000) thousand dollars. Upon discovering her mother's body Ms. Bair was unable to locate any cash in the places her mother normally hid the money.

Lawrence Flowers testified that in the early evening hours of January 29, 1988, the appellant, who was a friend of his, came to his house to smoke cocaine. Mr. Flowers' house was within two blocks of Ms. Burt's house. Mr. Flowers stated that the appellant ran out of money and left his home around 7:30 or 8:00 p.m. He stated that the appellant returned later that evening, at approximately 10:30 or 11:00 p.m., with a large amount of cash, primarily fifty ($50) dollar bills, which

were wadded up and stuffed in her shirt. When Mr. Flowers inquired as to how she obtained the cash, appellant replied that she had robbed somebody. Appellant gave Mr. Flowers fifty ($50) dollars to say that she had been in his house all day and night if someone asked. She also gave Mr. Flowers money to purchase more cocaine for her, along with beer and cigarettes. Appellant remained in Mr. Flowers' house until 7:00 or 8:00 a.m. the next morning.

Sheila Parker testified that she was in Mr. Flowers' house smoking crack with appellant on January 29, 1988. Ms. Parker saw appellant leave Mr. Flowers' house between 7:00 and 8:00 p.m., and return some time later that evening. When appellant returned, she called Ms. Parker into the bathroom and pulled some money out of her shirt. When Ms. Parker asked appellant where the money came from, appellant stated that she had beaten and stabbed someone. Ms. Parker observed blood stains on appellant's white pants and yellow jacket. Appellant became hysterical about the blood and asked Ms. Parker to help her wipe it off. Appellant then gave Ms. Parker twenty ($20) dollars to say that appellant had been at Mr. Flowers' home all night. Appellant also asked Ms. Parker to hold her knife for her; Ms. Parker interpreted that request as a request to dispose of the knife, and refused. Ms. Parker observed that the cash on appellant was wadded up and consisted primarily of fifty ($50) dollar bills. Appellant gave Ms. Parker money to purchase cocaine for her; however, Ms. Parker stated that she was unable to obtain any cocaine at that time.

Toronna Nash testified that she saw appellant around midnight on January 30, 1988 in the bathroom of Mr. Flowers' house. She identified the white jeans and yellow jacket that appellant was wearing on January 30, 1988.

Lena Lambright testified that on the morning of January 30, 1988, she was coming home from working the night shift when Mr. Flowers saw her on the street and asked her to help him remove appellant from his house. Ms. Lambright was a friend of appellant and Mr. Flowers; she was also the niece of Ms. Burt, the decedent. Ms. Lambright helped appellant, who

was acting strangely, out of Mr. Flowers' house and walked a few blocks with her. Appellant was carrying a large bag that looked like a knitting bag, from which she pulled a large knife. Appellant entered the housing projects, asking Ms. Lambright to wait for her. After waiting for some time without seeing appellant return, Ms. Lambright continued on to her own home.

Detective Walsh executed a search warrant for the residence of appellant on February 7, 1988. Among the items seized pursuant to that warrant were a pair of white jeans, a yellow jacket and a knife. Mr. Joseph McBride, a crime lab chemist, examined the items seized by Detective Walsh and discovered traces of human blood on the jacket. No blood was found on the other items, nor was the residue on the jacket sufficient for blood typing analysis.

Sharon Young, the week-end co-ordinator for Home Cross Care Services, with whom Appellant was employed as a home care nursing assistant, testified regarding her conversations with appellant on Saturday, January 30, 1988. Ms. Burt, the decedent, was one of appellant's regular patients scheduled for week-end service between noon and 2:00 p.m. on Saturday January 30, 1988. Ms. Young testified that appellant called her at 9:20 a.m. on January 30, 1988. Appellant was upset and explained to Ms. Young that she was running late and would have trouble meeting her appointments. Appellant called back at 10:00 a.m. stating that she was at Ms. Burt's house and was unable to gain admittance. According to Ms. Young's records, appellant did not service any of her clients on Saturday, January 30, 1988. However, on Sunday, January 31, 1988, appellant did keep all of her regularly scheduled Home Cross Care appointments.

Katherine Johnson testified that her aunt, Mrs. Knuckles, received service through Home Cross Care and that appellant was Mrs. Knuckles' regular home care provider. On January 30, 1988 when appellant arrived at Mrs. Knuckles' home, Ms. Johnson would not allow appellant in to care for Mrs. Knuckles. Ms. Johnson stated that appellant looked "wild" and Ms.

Johnson was afraid of her. At the time of trial Ms. Johnson was unable to identify appellant.

Mildred Williams testified that her father, Frank Newman, was a client of Home Cross Care, who regularly received care from appellant. However, on January 30, 1988 appellant never arrived to care for Mr. Newman.

Appellant also worked the night shift at Norwood Nursing home in January of 1988. Appellant was scheduled to work from 11:00 p.m. until 7:00 a.m. on January 29, 1988; however, the Director of Northwood Nursing Home, Cynthia Mezico, testified that appellant never showed up that night or any night thereafter. Appellant was eventually terminated from Northwood for job abandonment.

Kenneth Truitt, Sr. was the Director of Home Cross Care Services in January of 1988. On February 1, 1988, he called appellant into his office with the intent of dismissing her for failure to meet her regular appointment schedule on January 30, 1988. Mr. Truitt never had the opportunity to fire appellant. When he asked her if she was aware of Ms. Burt's death, appellant replied "I didn't do anything to that lady." Mr. Truitt asked if she knew anything about Ms. Burt and appellant replied "it is none of your business" and walked out of Mr. Truitt's office. That was the last contact appellant had with Home Cross Care Services.

Based on the statements of Mr. Flowers and Ms. Parker, Detective Nujiannes searched the police reports and hospital emergency records for the geographic neighborhood where Mr. Flowers and Ms. Burt lived, and found no reported beatings or stabbings for the time period from 4:00 p.m. January 29, 1988 through midnight February 1, 1988. The investigation revealed only the death of Ms. Burt in that area during that time frame. The medical examiner testified that Ms. Burt's death was a homicide. The cause of death was attributable to various traumas to the head and body, multiple stab wounds and manual strangulation. The stab wounds were the result of two or three different knives. The broken pieces of one knife were discovered at the scene.

A warrant for appellant's arrest was obtained on February 7, 1988. Appellant was not in her residence when the officers arrived to execute the warrant. A diligent search was undertaken, which included placing an article in the Philadelphia Inquirer along with a picture of appellant, stating that she was wanted in connection with the investigation into the murder of Violet Burt. Appellant was arrested on February 26, 1988 when she was found lying face down on a roadway in an intoxicated and drugged condition.

The evidence linking appellant to the murder is circumstantial. In testing the sufficiency of the evidence where a conviction is based upon circumstantial evidence, we review the evidence along with all inferences and conclusions that reasonably and logically can be drawn therefrom. *Commonwealth v. Gorby*, 527 Pa. 98, 588 A.2d 902 (1991). In this case we have no hesitation in concluding that the evidence was sufficient beyond a reasonable doubt to find appellant guilty of the brutal murder of Ms. Burt.[3] The Commonwealth established that Ms. Burt was intentionally killed by the use of a deadly weapon upon a vital part of her body. The Commonwealth also established that appellant had access to Ms. Burt's home, was in the vicinity on the night of the murder, was seen shortly thereafter, blood stained and boasting of having robbed and stabbed someone, and that the appellant acted in a manner consistent with guilt after the homicide. *Mitchell, supra.* Accordingly, we find that the evidence upon which appellant's conviction for first degree murder was based was sufficient as a matter of law to sustain that conviction.[4] In turning to the remainder of appellant's allegations we will address her claims in three sections, beginning with the allegations of pre-trial error.

3. We note for purposes of clarifying the record, that the opinion of the trial judge sets forth a slightly different factual scenario. However, we have conducted our own thorough review of the trial transcripts and exhibits and find the discrepancies to be minimal, and of no consequence to our conclusion regarding the sufficiency of the evidence.

4. The Appellant does not dispute the sufficiency of the evidence as to her convictions for robbery, 18 Pa.C.S. § 3701, and possession of an instrument of crime, 18 Pa.C.S. § 907.

## PRE–TRIAL ERROR

Appellant's initial claim of error is that her statements given to the police prior to her arrest should have been suppressed as they were made while she was in custody without the benefit of *Miranda* warnings.[5] Appellant's claim is without merit.

The first statement was taken at the appellant's residence on the day after the body was discovered. When she gave that statement, appellant was not a suspect, she was not in custody, and there was no reason for the police to provide her with *Miranda* warnings. Although the second statement was made at the police station, again, appellant was not in custody and was not considered a suspect at the time the discussion between her and the officer commenced. Admittedly, the officer testified that by the time appellant finished her statement he began to believe that she was a suspect; however, he never expressed that belief to appellant, nor did he continue the interrogation or interfere with her freedom of movement. In fact, after finishing their discussion the officer drove appellant home. Further, both statements were exculpatory and neither one was introduced against the appellant at trial.

Accordingly, the trial court properly concluded that the statements were not coerced from appellant as the result of custodial interrogation occurring in the absence of *Miranda* warnings. Further, the circumstances of how the statements were obtained is irrelevant, as the Commonwealth never sought to admit the statements at appellant's trial.

Appellant's second claim of pre-trial error is that insufficient evidence was introduced at the preliminary hearing to justify the decision to hold the appellant over for trial on the charge of murder. Specifically, the appellant asserts that the prosecution merely established that a crime had occurred, but not that appellant was in any way connected to that criminal activity. Appellant's claim of error is moot in light of our discussion above regarding the sufficiency of the evidence.

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Once the Commonwealth establishes at trial that the evidence was sufficient beyond a reasonable doubt to connect the appellant to the crime, any question regarding insufficient evidence at the preliminary hearing is irrelevant. *Commonwealth v. McCullough*, 501 Pa. 423, 461 A.2d 1229 (1983).

## TRIAL ERROR

In her first claim of trial error, appellant asserts that the Court erred in excluding evidence that the decedent was afraid of and had been threatened by persons other than appellant. During the course of the trial appellant attempted to elicit testimony from the investigating officer that he had suspected the decedent's nephew of being involved in the murder. Trial counsel posed certain questions on cross examination to Detective Duffy, as to whether or not the Detective had formed the belief that the decedent's nephew, John Butler, was a suspect in the death of Ms. Burt. This line of inquiry was objected to by the Commonwealth and the objection sustained. Appellant asserts that sustaining that objection prevented her from presenting evidence of another suspect, who may very well have committed the offense. In support of her position appellant relies upon *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977).

*Boyle* holds that evidence that someone other than the defendant may have committed the crime is always admissible. However, appellant's reliance upon *Boyle* is misplaced. Appellant was not precluded from presenting evidence that John Butler may have been a suspect, or that he may have had a motive for killing Ms. Burt. Appellant was merely prevented from eliciting the inference that John Butler was a suspect, via cross-examination, where appellant had no relevant admissible evidence as to that supposition. Merely suggesting that someone else may have had a motive is not evidence. Thus, appellant's allegation of error is without merit, she was not prevented from presenting evidence as to another suspect, and in fact, appellant presented no such evidence in her own case. Appellant was properly prevented

from creating inferences of the existence of another suspect absent evidence to support that inference. *See Commonwealth v. Baez,* 494 Pa. 388, 431 A.2d 909 (1981), and *Commonwealth v. Smith,* 457 Pa. 638, 326 A.2d 60 (1974) (questions which assume facts not in evidence are improper).

■ Next, appellant asserts error by the trial court in admitting two particular photographs which she alleges were inflammatory. The admission of photographs is a matter vested within the discretion of the trial court. The trial court will not be found to have abused that discretion unless the essential evidentiary value of the photograph is clearly outweighed by the inflammatory effect the picture will have upon the minds and passions of the jurors. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 422, 116 L.Ed.2d 442 (1992).

■ In the instant case, one of the photos showed the outline of the decedent's body, the body having been matted out, with a blood stain visible around the outline with the heaviest amount of blood visible in the area of the decedent's head. This photograph was in black and white, and the body was deliberately deleted to minimize any gruesome details. Further, the presence of blood in a photograph of a homicide victim is not in and of itself inflammatory. *Chester,* 526 Pa. at 592, 587 A.2d at 1374. Accordingly, we find that the trial court did not abuse its discretion in admitting this photograph.

■ The second photograph objected to is one depicting the decedent alive. The Commonwealth's stated purpose in offering this photograph of Ms. Burt alive was to establish that she had been a life in being prior to the homicide. The decedent's daughter and Mr. Lewis both testified that Ms. Burt was alive on the day before her body was discovered. The coroner's testimony also established that death resulted from the beating and stab wounds; thus, she was a life in being before the homicide. The existence of Ms. Burt as a life in being was clearly established through the testimony of various witnesses. The Commonwealth therefore did not need the photograph to establish this fact. This photograph was

introduced for the purpose of engendering sympathy for the victim with the intent of creating an atmosphere of prejudice against the defendant. The admission of this type of photograph is error. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). Photographs of this type are clearly irrelevant to the central issue at trial, which is the guilt or innocence of the accused. *Commonwealth v. Mehmeti*, 501 Pa. 589, 462 A.2d 657 (1983). Only where the victim's character or physical abilities are called into question will such evidence be relevant. *Commonwealth v. Scoggins*, 466 Pa. 355, 353 A.2d 392 (1976) (the victim's obvious physical handicap was relevant to the claim of self-defense).

The question then becomes whether the error was harmless. *Story*, 476 Pa. at 404, 383 A.2d at 162; *Mehmeti*, 501 Pa. at 596, 462 A.2d at 660. An error is harmless when the Commonwealth can establish "that the evidence of guilt was so overwhelming, and the error ... so insignificant by comparison, that the error was harmless beyond a reasonable doubt." *Story*, 476 Pa. at 417, 383 A.2d at 169. In *Story*, the Commonwealth had introduced two photographs of the victim, one of which depicted him with his wife and their crippled daughter. The widow was called as a witness to identify the photographs and she went on at great length to describe for the jury how the victim's death had devastated the lives of her and her daughter.

In the instant case the photograph was identified by the decedent's daughter, who merely related when and where the photograph was taken and verified that it was an accurate depiction of her mother immediately prior to her death. The testimony surrounding the photograph in this case was limited. Further, the actual polaroid snapshot of the victim does not portray her as particularly old or frail, nor does it reveal that she was an amputee seated in a wheelchair, as in the photograph the victim is seated behind a table. Although admission of the photograph was clearly improper and irrelevant, in light of the overwhelming circumstantial evidence of the appellant's guilt, we conclude that the error was harmless.

408

■ The next allegation of error relates to a photograph of the appellant. On February 7, 1988, about one week after the death of Ms. Burt, the police obtained an arrest warrant for the Appellant. However, the police were unable to locate appellant as she had left her previous address and failed to appear at either of her two jobs. During the course of their search for appellant the police ran an article in the *Philadelphia Inquirer* on February 11, 1988, with a picture of Appellant, relating their interest in speaking with her regarding the death of Ms. Burt. It is the admission of this photograph before the jury to which the appellant objects.

Appellant asserts that it was unnecessary to introduce the photograph and article. Further, she asserts that the fact that the police placed the photograph into the newspaper would allow the jury to infer that it was a police file photo, and thus, they would conclude that appellant had a previous criminal record. The introduction of the article containing the photograph was relevant to the Commonwealth's position that appellant was eluding the police, thus creating an inference of guilt. As we reiterated in *Commonwealth v. Gorby*, 527 Pa. 98, 588 A.2d 902 (1991), flight coupled with other factors will always be relevant to raise an inference of guilt.

■ Further, the mere fact that the police possess a photograph does not create an inference of prior criminal activity on the part of the accused. In *Commonwealth v. Reiss*, 503 Pa. 45, 468 A.2d 451 (1983), the Court stated that where there is no indication that the photographs were mugshots or police file photos, reference to or admission of them is not error. In the instant case there was no testimony regarding the source of the photograph from which any inference could be drawn. Accordingly, the *Philadelphia Inquirer* article with accompanying photograph of the appellant was relevant and its admission could not be seen as creating an inference of appellant's prior criminal activity in the minds of the jury.

■ Appellant next claims error by the trial court in allowing the decedent's daughter, Rose Bair, to testify regard-

ing the decedent's habit of keeping large sums of cash hidden in her home. Appellant asserts that Ms. Bair's testimony was mere speculation without proper foundation and should have been excluded. To the contrary, the record indicates that Ms. Bair was quite familiar with her mother's habit in keeping large sums of cash at hand and that she had recently counted the money in her mother's presence, thus giving rise to her opinion that between $5,000 and $7,000 would have been there at the time of the murder. Ms. Bair further testified that upon discovering her mother's body she was unable to locate the money in any of the places the decedent frequently hid her cash. The testimony was not speculative, and it was relevant to provide a possible motive for the murder of Ms. Burt.

Appellant's argument really attacks the credibility of Ms. Bair. On cross-examination defense counsel attacked Ms. Bair's recollection as to where the money would be and exactly how much money was there, and created an inference that Ms. Bair had access to the money. Clearly, counsel was able to examine these issues on cross and leave for the jury a determination of how much weight to assign this witness's testimony. The credibility of a witness is a question for the fact-finder. *Commonwealth v. Mayfield,* 401 Pa.Super. 560, 585 A.2d 1069 (1991). Counsel's assertion that a witness was not credible does not mean that the testimony proffered by that witness was inadmissible. The trial court did not err in permitting Ms. Bair to testify. WHARTON, EVIDENCE, 14th Ed. Vol. 1, §§ 6 & 7 [1985].

Appellant's final argument in the guilt stage is that numerous incidents of prosecutorial misconduct occurred, which individually and/or cumulatively interfered with her right to a fair trial and caused irreparable prejudice. A new trial will be granted where the conduct of the prosecution misleads the jury so that they form in their minds a fixed bias such that they cannot fairly weigh the evidence and render a true verdict. *Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Bricker,* 506 Pa. 571, 487 A.2d

410

346 (1985); *Commonwealth v. Johnson,* 516 Pa. 527, 533 A.2d 994 (1987).

Appellant lists ten allegations of prosecutorial misconduct; generally they can be grouped into three categories. In the first category, Appellant asserts that on four specific occasions during the trial the prosecution committed evidentiary errors, which were as follows:

1) The prosecutor impermissibly asked a witness how long he had known the decedent before she was "murdered." However, the prosecutor acknowledged his error, withdrew the question and a cautionary instruction was immediately given.

2) The prosecutor asked leading questions of his own witness in an attempt to elicit testimony that the appellant's clothing on the night of the crime was spattered with blood. The prosecutor was reprimanded by the court for using leading questions, the questions were then rephrased and the testimony was properly admitted.

3) The prosecutor failed to produce business records from appellant's employer, yet when questioning the employer sought testimony from these same records. Defense counsel objected and demanded the records. The witness was excused from the stand until the records could be obtained and provided for defense review, after which she was recalled and her testimony resumed.

4) The prosecutor deliberately elicited hearsay testimony from a witness that he had consulted the National Crime Information Center computer and discovered the appellant was a wanted person. Defense counsel had objected to this testimony at trial and the objection was overruled. The trial court found the testimony was not hearsay as it related that witness's actions in attempting to locate the appellant after the arrest warrant was issued.

None of the above-listed allegations constituted misconduct on the part of the prosecutor; therefore, none of them can be seen as causing undue prejudice to the Appellant.

The next five allegations of misconduct can be categorized as allegations of misbehavior attributable to the demeanor of the prosecutor. Specifically they are:

5) The prosecutor badgered his own witness who was unable to identify the Appellant, and even pointed her out to the witness. The record reflects that the witness never did identify the appellant and in fact went on to testify on cross-examination that appellant was a good and faithful home care worker.

6) The prosecutor repeatedly attempted to get evidence before the jury after it had been ruled inadmissible by the trial court. We agree that the prosecutor was persistent; however, so was the trial court in enforcing its rulings. Persistence is not prosecutorial misconduct, and greater specificity is required in asserting an allegation of error.

7) The prosecutor behaved in an unprofessional manner, stamping his feet and yelling at defense counsel and the court. We do not believe that in this case the demeanor of the prosecutor rises to the level of prosecutorial misconduct.

8) The prosecutor repeatedly ignored rulings by the court and continued in his efforts to get inadmissible evidence before the jury. Our review of the record indicates that the objections were sustained and the inadmissible testimony stricken from the record. Again, defense counsel is merely objecting to the persistence of the prosecutor.

9) The prosecutor improperly elicited prejudicial testimony from a detective regarding evidence of the appellant's flight, after he had been pre-warned by the court to avoid that particular line of examination. Appellant references sections of the trial transcript which do not conform to the allegations made, nor in our independent review of the transcript are we able to discern exactly what testimony is at issue.

Finally, appellant alleges numerous misstatements of fact and argumentative behavior by the prosecutor in his closing statement to the jury. Each individual objection was properly dealt with by the trial court and not one merits further review.

Appellant's individual assertions of prosecutorial misconduct are each without merit. Accordingly, her allegation of cumulative prosecutorial misconduct must also fail.

### PENALTY PHASE

At the penalty hearing the Commonwealth argued two aggravating circumstances in support of its position that appellant should receive the death penalty: the killing occurred during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and the appellant had a significant history of felony convictions, 42 Pa.C.S. § 9711(d)(9). The jury found both aggravating circumstances. The appellant argued two mitigating circumstances: that her participation in the murder was relatively minor,[6] 42 Pa.C.S. § 9711(e)(7), and general evidence of her character and record, 42 Pa.C.S. § 9711(e)(8). The appellant also sought to present mitigating evidence as to her age at the time of the killing pursuant to 42 Pa.C.S. § 9711(e)(4). The trial court refused to allow appellant to argue her age as a mitigating factor. The jury found no mitigating circumstances, and a sentence of death was imposed.

Appellant argues that the death penalty statute is unconstitutionally vague in that it fails to define the phrase "significant history of felony convictions." Appellant argues that this phrase is so vague that a criminal defendant has no clear idea whether or not his past record will be deemed "significant," thus exposing him to the death penalty. Further, it is the appellant's position that since the jury must decide in each case whether or not the number and nature of the prior crimes committed by the specific defendant before them constitutes a "significant history of felony convictions," the resultant verdicts are imposed in an inconsistent and random manner.

As to appellant's initial point, the argument is absurd. Apparently appellant believes that if a designated list of

---

**6.** Appellant testified in the Penalty Hearing that two of the prosecution witnesses, Lena Lambright and "Peaches" (Toronna Nash) had committed the killing while Appellant acted as look-out.

felonies were established all criminal defendant's would know in advance that committing two or more of those crimes would lead to the possible imposition of the death penalty and their behavior would be modified accordingly. This Court is unable to ascertain a rational basis for appellant's argument.

Appellant's second point has already been addressed and rejected by this court on numerous occasions. *See Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986); *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985); and *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984). Accordingly, the aggravating circumstance at 42 Pa.C.S. § 9711(d)(9) is not so vague as to be unconstitutional.

■ Next appellant asserts that the trial court committed reversible error in failing to properly instruct the jury on two specific points during the penalty phase. First appellant asserts that the court failed to define for the jury what is a "significant history of felony convictions." Appellant offers no argument on this issue other than merely setting forth the assertion. However, in our review of the record we note that counsel for appellant asked the trial court to find as a matter of law that appellant's two prior convictions for aggravated assault could not be considered a "*significant* history of felony convictions." The trial court properly denied that request and charged the jury that it was their function to determine if the two prior aggravated assaults were a sufficient basis from which they could conclude beyond a reasonable doubt that appellant had a "*significant* history of felony convictions." The appellant's claim on this point is without merit. *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833 (1985), *cert. denied*, 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986).

■ The second point upon which appellant claims the trial court improperly instructed the jury concerns the court's refusal to submit to the jury appellant's age as a mitigating factor. The appellant was 34 years old at the time of the murder. The trial court found as a matter of law that her age would have no bearing on the jury's consideration of mitigating circumstances. The guidelines to be considered before

submitting the defendant's age as a mitigating circumstance were discussed by this Court in *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

In *Frey,* the trial court submitted to the jury a verdict slip containing six out of the eight specified mitigating factors as listed in 42 Pa.C.S. § 9711(e).[7] In that case the defendant was 42 years old at the time of the murder. In instructing the jurors the trial court stated that the jury could consider the "youth or advanced age of the defendant, as opposed to simply the 'age'." 504 Pa. at 436, 475 A.2d at 706. This Court specifically approved the trial court's interpretation of "age":

> [M]any privileges are granted the young and the elderly, and many privileges are withheld. In directing the jury (or judge) to consider the "age" of the defendant as a possible mitigating circumstance, the legislature simply recognized this distinction. There is no necessity to define the exact parameters of "youth or advanced age" that would qualify a defendant to introduce his age as a mitigating circumstance, for the jury (or judge) is quite capable of drawing its own conclusions. It is enough to say in this case that the fact that the defendant was 42 years of age when he committed the crime of murder can in no way be offered as a factor in mitigation of the seriousness of that crime.

*Id.* at 441, 475 A.2d at 706. Applying the language of *Frey* to the facts of the instant case we cannot find the trial court erred in refusing to submit to the jury the appellant's age as a mitigating circumstance.

In her final argument, the appellant asserts error by the court in allowing the prosecutor to misrepresent the facts of her previous convictions to the jury during the penalty phase. Appellant's prior record of felony convictions consisted of one burglary and two aggravated assaults. Appellant makes three specific claims within this argument.

---

7. Two of the factors were omitted from the list as the trial court found there to be no evidence presented to the jury on those two points. 42 Pa.C.S. § 9711(c)(1)(ii).

First, appellant alleges error in allowing the prosecutor to elicit testimony that in one of the prior aggravated assaults the appellant used a knife, and that one of the assault victims was a 71–year–old male. Appellant cannot contest that these were the actual facts, rather she argues that their admission was extremely prejudicial. The facts of the prior convictions are properly placed before the jury at a penalty stage hearing so that the jurors may assess the weight to be given said factors. *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984).

Second, appellant argues that the jury was improperly informed of "other charges" against her which had not resulted in convictions. When the clerk of court testified to appellant's record on the prior assaults she inadvertently stated "among other charges is aggravated assault." Defense counsel objected and the jury was immediately instructed to disregard the comment as they were only permitted to consider prior convictions. The error created by the witness's statement was then rendered harmless by the court's immediate instruction. *Commonwealth v. Reid,* 533 Pa. 508, 626 A.2d 118 (1993).

Third, appellant argues that the prosecutor improperly presented her prior conviction for burglary where there was no evidence that the conviction had involved violence or the threat of violence. This argument is completely without merit. This Court has held that burglary is a crime involving an inherent threat of violence and may be relied upon to prove a history of violent felony convictions. *See Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663 (1992); *Commonwealth v. Rolan,* 520 Pa. 1, 549 A.2d 553 (1988). Further, the trial court instructed the jury to disregard appellant's burglary conviction as the Commonwealth had failed to produce any facts indicating that the conviction was a crime involving violence or the threat thereof.

Finally, in accordance with our statutory duty, 42 Pa.C.S. § 9711(h)(3), we must affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Upon our review of the record we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We further find that the evidence was sufficient to establish the two aggravating factors found by the jury. Specifically, that the murder occurred in the course of a felony (robbery), and that the appellant had a significant history of felony convictions involving force or the threat of force (two aggravated assaults). 42 Pa.C.S. § 9711(d)(6) and (d)(9).

In addition, after reviewing the information compiled by our Administrative Office in accordance with the requirements set forth in *Frey*, we do not find the sentence imposed upon this defendant to be disproportionate to the sentence imposed upon defendants in similar cases. Accordingly, the judgment of sentence of death must be affirmed.[8]

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., was an appointed Justice of the Court at the time of argument.*

---

8. The Prothonotary of the Supreme Court is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Court to the Governor. 42 Pa.C.S. § 9711(i).

* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94R1801, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.