721 A.2d 1058

COMMONWEALTH of Pennsylvania, Appellee,

v.

Dorothy BARTLETT, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1998.

Decided Dec. 21, 1998.

Norris E. Gelman, Philadelphia, for Dorothy Bartlett.

Catherine Marshall, William R. Spade, Jr., Philadelphia, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION*

NEWMAN, Justice.

Dorothy Bartlett (Appellant) appeals from an Order of the Superior Court that affirmed the Judgment of Sentence of the Court of Common Pleas of Philadelphia County (trial court) imposed for Appellant's convictions of first degree murder and related offenses in the killing of her husband Odell Bartlett. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Several days before the murder in question, Appellant and her husband argued regarding his refusal to let their son Darren Bartlett reside in their family home. Following the argument, Appellant's husband sought and obtained a protective order prohibiting Appellant from entering the family home.

On April 14, 1992, Darren, who had access to the house during the day to care for some pets, called Appellant to inform her that his father was in the process of changing the locks on the front door. Shortly after that, Appellant arrived at the house and Darren gave her entry. Appellant went upstairs to a bedroom and began arguing with her husband. Darren, on hearing the commotion, ran upstairs and entered the bedroom, where he discovered his mother stabbing his father to death with a butcher knife.

Appellant and Darren attempted to conceal the crime by cleaning the room with ammonia and, at his mother's request, Darren disposed of the blood-soaked linens. Darren subsequently wrapped his father's body in plastic, loaded it into his father's van, and drove it to an abandoned lot. He left the body there, hoping the police would think that local drug addicts and prostitutes had murdered his father.

The police subsequently arrested Darren and charged him in his father's death. Initially, Darren denied any involvement, but after his trial had begun, he agreed to plead guilty

to third degree murder. As part of his plea agreement, Darren agreed to testify against Appellant in her trial. Darren in fact testified against Appellant in her first trial, in which the jury found her guilty of first degree murder. The Superior Court reversed the conviction, however, granting a new trial based on an erroneous jury instruction.

Darren again testified at Appellant's retrial. Both the prosecutor and Appellant's counsel questioned Darren at length concerning his own murder trial, his plea agreement, and his motive for testifying. During cross-examination, Appellant's counsel asked Darren to name the witnesses he had intended to call at his own trial, and the prosecutor objected to the line of questioning.

The trial court held an *in camera* conference, where Appellant's counsel stated his intent to question Darren Bartlett regarding what Darren had told his attorney about the witnesses he had intended to call at his trial. At the conclusion of this conference, the trial court ruled that the proposed line of questions would not be allowed because the questions lacked a sufficient evidentiary basis.

The trial proceeded, and the jury found Appellant guilty of first-degree murder, abuse of corpse, and related offenses. The trial court subsequently sentenced Appellant to life imprisonment and lesser sentences to run concurrently on the related charges. Appellant appealed to the Superior Court, which affirmed the Judgment of Sentence of the trial court.

## DISCUSSION

Relying primarily on this Court's decision in *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391 (1987), Appellant argues that the trial court erred in precluding her counsel from questioning Darren about discussions with his attorney concerning the witnesses he had intended to call at his own trial. Appellant does not deny that Darren could have invoked his attorney-client privilege, but, pursuant to *Sims*, she argues that the court should have forced Darren to invoke his privilege in the presence of the jury. We disagree.

In *Sims*, "[t]he heart of the prosecution's evidence against [the defendant] was the testimony of Barry Hilton, a person in whose abode the murder was perpetrated and who, himself, was at one point charged with the crime." *Sims*, 513 Pa. at 375, 521 A.2d at 395. The defendant's counsel sought to cross-examine Hilton concerning statements that Hilton had made to his attorney while Hilton was charged with the crime. Outside the presence of the jury, Hilton invoked his attorney-client privilege. The trial court held that the privilege applied, and therefore precluded the defendant's counsel from questioning Hilton regarding communications with his attorney. On appeal, this Court held that Hilton should have been compelled to assert his attorney-client privilege in the presence of the jury:

> Questioning Hilton as to whether he had previously made inconsistent statements with those being offered at trial in support of [the defendant's] guilt was certainly relevant and appropriate. Forcing the witness to invoke the statutory privilege in the presence of the jury in no way undermines the underlying policy supporting that privilege.

> Once the privilege is recognized and upheld, the privileged communication remains inviolate. However, on the other hand, the invocation of that privilege before the jury could have reasonably provided the basis for that tribunal to question the accusations made by the witness against the accused. . . .

> To insulate such a witness from having to invoke his privilege in the jury's presence, as did the trial court in this case, unfairly bolstered the credibility of a witness, whose testimony was crucial to the success of the prosecution.

*Sims*, 513 Pa. at 376–77, 521 A.2d at 395–96.

Although the case at bar is similar to *Sims* in some respects, the differences are more significant. In *Sims*, the defendant's attorney sought to cross-examine Hilton regarding alleged prior inconsistent statements to his attorney, which, if not protected by the attorney-client privilege, would clearly have been relevant and admissible to impeach Hilton's credibility. Here, however, Appellant's counsel sought to cross-

examine Darren concerning his defense strategy, particularly the witnesses he and his attorney had intended to call at his trial. Even if we disregard the attorney-client privilege, we fail to discern how such testimony would have been relevant or admissible.

Unlike the defendant in *Sims*, Appellant does not allege that statements Darren made to his attorney were inconsistent with his trial testimony, nor does Appellant explain how Darren's identifying the witnesses he intended to call at his own trial would impeach his credibility or otherwise enhance Appellant's defense. Indeed, Appellant's proposed cross-examination with respect to Darren's privileged communications with his attorney strikes us as precisely the type of "fishing expedition" that Justice Hutchinson condemned in his concurring opinion in *Sims:*

[T]he law relating to examination of witnesses and the ethics of the profession require that the cross-examiner have a sound reason for believing his questions will yield information which is materially favorable to his client before delving into areas covered by the attorney-client privilege. The policy ends fostered by the privilege, encouraging full disclosure between an attorney and his client, are ill-served by "fishing expeditions" seeking to undermine a witness's testimony through the invocation of the privilege. Counsel should have a reasonable belief that a privileged conversation relevant to the case at hand took place before cross-examination likely to force a witness to invoke the privilege is allowed. It is only because there is ample evidence on this record that counsel had the requisite information to properly question the witness that I can join the majority....

An attorney must have a reasonable basis which satisfies the sound discretion of the trial judge before he can be permitted to probe into confidential communications on cross-examination. Counsel's groundless pursuit of the invocation of the privilege by a witness would inflict a grave wound upon the ancient privilege guarding communications between attorney and client, a privilege which breathes life

into our independent adversarial system. Therefore, I believe counsel must demonstrate, as he did in this case, a reasonable belief that a material privileged discussion took place before cross-examining a witness on communications with that witness's attorney. Of course, general law requires at least a good faith belief that the cross-examination will yield relevant information. [Citations omitted]. A fortiori where the attorney-client privilege is involved, mere subjective belief that the inquiry is relevant should not be enough. A higher standard of showing to the court a reasonable belief that the witness has material information not otherwise available seems more appropriate to me. *Sims,* 513 Pa. at 378–79, 521 A.2d at 397 (Hutchinson, J., concurring).

Here, the trial court precluded Appellant's proposed cross-examination "not because the questions infringed upon the witness' attorney-client privilege but because the questions called for speculation and assumed facts not in evidence." Trial Court Opinion, at 4. Unlike the defendant's counsel in *Sims,* Appellant's attorney was unable to demonstrate a reasonable basis for inquiring into Darren's privileged communications regarding his attorney's trial strategy. As the trial court noted, "[t]here is no evidence that Darren Bartlett planned to present a formal defense or call witnesses on his behalf during his aborted trial." Trial Court Opinion, at 4. Lacking any evidentiary foundation, the questions Appellant's counsel sought to ask were improper. *See Commonwealth v. Rivers,* 537 Pa. 394, 405–06, 644 A.2d 710, 715–16 (1994) (citing *Commonwealth v. Baez,* 494 Pa. 388, 431 A.2d 909 (1981); and *Commonwealth v. Smith,* 457 Pa. 638, 326 A.2d 60 (1974)). Consequently, the trial court did not abuse its discretion in prohibiting Appellant's counsel from pursuing that line of questioning.

Accordingly, we affirm the Order of the Superior Court.