J-S26037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHIL LEONE, | : | |
| | : | |
| Appellant | : | No. 3307 EDA 2017 |

Appeal from the Judgment of Sentence June 5, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0000626-2016

BEFORE: BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

CONCURRING MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 06, 2018**

I agree that Appellant's judgment of sentence should be affirmed in part and reversed in part, but write separately to address issues two and five.

## I. Issue #2 – Photograph of C.S.

Regarding the admission of a photograph depicting C.S. at the age of five, the Majority states that we must examine whether the photographs are inflammatory. I disagree. ***Commonwealth v. Vucich***, --- A.3d ---, 2018 WL 4061576 (Pa.Super. August 27, 2018), recently addressed the same issue. Therein, the Commonwealth introduced two photographs of the victim, who was twenty at the time of trial, depicting his appearance when the sexual abuse actually occurred. The trial court, like my colleagues today, filtered the photograph through the inflammatory inquiry. ***Vucich*** determined that test was inapplicable. We stated that, "The usual context for a challenge to a

_____

* Former Justice specially assigned to the Superior Court.

photograph is . . . a gruesome photograph in which the relevance of the item is obvious and undisputed." *Id*. at *2. However, when a party challenges the admission of a photograph on general irrelevance grounds, the inflammatory inquiry is irrelevant. That bar is simply a specific prohibition on otherwise admissible and relevant evidence.

Appellant, like Vucich, did not claim that the photographs were inflammatory in that the photographs displayed carnage or some other subject matter which tends to trigger visceral feelings. Instead, the argument was that there was no need to establish what C.S. looked like at age five, as that point was irrelevant. *Vucich* discussed cases holding that pictures of a homicide victim as a life in being were generally irrelevant, and extended that principle to this situation.

> There are obvious parallels between the Commonwealth's seeking to establish through photographic proof what a homicide victim looked like around the time of his or her death, and the facts *sub judice*, in which the Commonwealth sought to show the victim's appearance near the time of the crimes. Just as such evidence is generally irrelevant in a homicide prosecution—at least in cases where the "life in being" element is not in question—so too were C.D.'s childhood pictures irrelevant, as Appellant did not contest that C.D. was actually a child at the times he testified that the abuse occurred. There was thus no need to prove to the jury what C.D. looked like as a child, rendering the evidence irrelevant.
>
> We further disagree with the Commonwealth's assertion that the evidence was relevant because the photographs "were necessary to visually depict his appearance at the time the crimes occurred." Commonwealth's brief at 13. It is undeniable that, due to the passage of time in this case, photographs or some other type of demonstrative evidence were indeed necessary to establish C.D.'s appearance at the time of the crimes. The Commonwealth's argument, however, begs the question by assuming that the

- 2 -

victim's visual appearance at the time of the crimes needed to be established in the first place.

*Id*. at *4 (footnote omitted).

The Commonwealth herein asserts that the photographs were relevant to establish that C.S. was less than thirteen at the time of the crimes, but that fact was not in dispute and was testified to by the victim as well as her mother. For the reasons discussed in **Vucich**, I conclude that the photographs were irrelevant and therefore inadmissible. Nevertheless, I would conclude the error was harmless.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis;* (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Chmiel**, 889 A.2d 501, 521 (Pa. 2005) (quoting **Commonwealth v. Robinson**, 721 A.2d 344, 350 (Pa. 1998)).

Although the harmless error doctrine places the burden on the Commonwealth to prove beyond a reasonable doubt that the error could not have contributed to the verdict, the Commonwealth did not assert this doctrine. However, our jurisprudence does not require the Commonwealth to raise the matter in its brief. As our Supreme Court stated in **Commonwealth v. Moore**, 937 A.2d 1062, 1073 (Pa. 2007):

> We recognize that the Commonwealth has the burden of proving beyond a reasonable doubt that the error could not have

- 3 -

contributed to the verdict, and that it does not offer a harmless error argument in its brief. Nonetheless, an appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by the appellee.

*Id*. at 1073 (citations omitted).

I would therefore find that the error was harmless beyond a reasonable doubt on the grounds that any prejudice was *de minimis*, for substantially the same reasons expressed in **Vucich**.

We find that any prejudice was *de minimis* and therefore the error was harmless beyond a reasonable doubt. There is a natural overlap between what the photographs show and how the prosecution uses the photographs, and any resulting prejudice. In [**Commonwealth v. Story**, 383 A.2d 155 (Pa. 1978)], our Supreme Court noted that the photographs were introduced along with testimony of the victim's "family status" and "other events of a personal nature." **Story**, *supra* at 157. . . . This circumstance is more akin to **Commonwealth. v. Rivers**, 644 A.2d 710, 713 (Pa. 1994), in which our Supreme Court concluded that introducing the victim's photograph was harmless beyond a reasonable doubt:

> In the instant case the photograph was identified by the decedent's daughter, who merely related when and where the photograph was taken and verified that it was an accurate depiction of her mother immediately prior to her death. The testimony surrounding the photograph in this case was limited. Further, the actual polaroid snapshot of the victim does not portray her as particularly old or frail, nor does it reveal that she was an amputee seated in a wheelchair, as in the photograph the victim is seated behind a table. Although admission of the photograph was clearly improper and irrelevant, in light of the overwhelming circumstantial evidence of the appellant's guilt, we conclude that the error was harmless.

**Rivers**, *supra* at 716.

Therefore, while the photographs were irrelevant, their use was limited, and, according to the parties' descriptions of the items, the exhibits simply depicted C.D.'s general appearance at the time of these crimes. While improperly introduced, we conclude that any prejudicial effect was *de minimis.*

Related to this point, there is one obvious distinction between the scenarios in the examined homicide cases and these circumstances. In a homicide prosecution, but for the introduction of demonstrative evidence of the victim, the jury will have no frame of reference for the victim's appearance. In contrast, the jury was obviously aware of the fact that C.D. was once a child, and it takes no great leap of imagination to imagine what a witness may have looked like as a child. This point further highlights the *de minimis* prejudice.

***Vucich***, ***supra*** at *5.

As the Majority notes, the photograph at issue simply depicted C.S., and I therefore find the error was harmless beyond a reasonable doubt.

## II.    Issue #5 – Prior consistent statement

Appellant asserted that the trial court improperly allowed three witnesses to testify regarding out-of-court statements. The Majority holds that all three statements were admissible pursuant to Pa.R.E. 613, which states in pertinent part:

**(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

(1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

- 5 -

> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

The Majority largely adopts the trial court's approach, which opined that the prior consistent statements were admissible to rebut an implied charge of fabrication. Additionally, the Majority approvingly cites **Commonwealth v. Giles**, 182 A.3d 460 (Pa.Super. 2018), which sanctions an approach to prior consistent statements that was disavowed by the more recent case **Commonwealth v. Bond**, --- A.3d ---, 2018 WL 2947871 (Pa.Super. June 13, 2018).

In the particular context of prior consistent statements by child victims, our precedents have suggested that **all** such statements are *per se* admissible due to the unique considerations inherent to child abuse cases. The rationale was that these statements are admissible for purposes of corroboration, not rehabilitation. This theory was prominently expressed in **Commonwealth v. Willis**, 552 A.2d 682 (Pa.Super. 1988) (*en banc*).

> The general rule precluding corroboration of unimpeached testimony with prior consistent statements is subject to exceptions when particular circumstances in individual cases tip the relevance/prejudice balance in favor of admission. Among the common examples of such exceptions are prior consistent statements which constitute prompt complaints of sexual assault and prior consistent statements which constitute prior statements of identification. Evidence of a prompt complaint of sexual assault is considered specially relevant because (rightly or not) a jury might question an allegation that such an assault occurred in absence of such evidence.

> Prior consistent statements may also be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment. . . . jurors are likely to suspect that unimpeached testimony of child witnesses in general, and child victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event. Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion.

*Id*. at 691–92 (citations and footnotes omitted).

Notably, **Willis** analyzed the admissibility of prior consistent statements under a hearsay framework. "To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay." *Id*. at 691. As noted in **Bonds**, **Willis** predates the enactment of the Rules of Evidence:

> The trial court cited [**Commonwealth v. Hunzer**, 868 A.2d 498 (Pa.Super. 2005),] in support of its decision. There, the victim testified that the defendant assaulted her by "sticking his tongue and his finger in my private area." **Hunzer**, 868 A.2d at 506. The Commonwealth, over the defendant's objection, elicited the victim's prior consistent statements through the testimony of a caseworker. **Id.** at 511–12. The **Hunzer** Court wrote:
>
>> Prior consistent statements may [...] be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment. [...] [J]urors are likely to suspect that unimpeached testimony of child witnesses in general, and child victims of sexual assaults in particular, may

be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event. Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion.

*Id.* at 512 (quoting ***Commonwealth v. Willis***, 380 Pa.Super. 555, 552 A.2d 682, 691–92 (1988), *appeal denied*, 522 Pa. 583, 559 A.2d 527 (1989)).

The quoted passage seems at odds with the express language of Rule 613, in that it is far more permissive of prior consistent statements, at least in the context of the sexual assault of a child. ***Willis***, from which the ***Hunzer*** Court quoted, pre-dated the enactment of Rule 613 and the Tender Years Act, 42 Pa.C.S.A. § 5985.1. The ***Hunzer*** defendant therefore argued that the trial court erred in relying on ***Willis*** rather than Rule 613. The ***Hunzer*** Court concluded that the Commonwealth used prior consistent statements "to rebut an inference of recent fabrication arising during cross-examination." *Id.* at 513. Thus, the ***Hunzer*** Court tracked the language of Rule 613, but it did not engage in a detailed analysis of the timing of the prior consistent statement.

***Bond***, *supra* at *3-4 (footnote omitted).

***Giles***, relied upon by the Majority herein, cites and discusses both ***Hunzer*** and ***Willis***. In ***Giles***, the child victim, Q.H., testified that the sexual abuse started in April of 2014. Q.H. gave details of the crimes in a forensic interview conducted March 11, 2015. On cross-examination, defense counsel twice impeached Q.H. with the contents of the prior consistent statement, alleging that Q.H. told the interviewer that the first incident occurred in July of 2014.

The impeachment was misleading. Our opinion noted, "**nowhere** in the transcript of the forensic interview does Q.H. ever mention that the first incident, or any of the incidents for that matter, occurred in July." *Id*. at 462 (emphasis in original). Quoting **Hunzer**/**Willis**, we held that admission of the forensic interview was permitted for corroborative purposes.

I submit that, to the extent **Giles** relied upon the *per se* corroboration rule in **Hunzer** and **Willis**, that reliance is misplaced and superseded by **Bond**.[1] Nevertheless, I agree that **Giles** reaches the correct result, because Giles incorrectly suggested that Q.H.'s memory of the events was faulty by posing a leading question that she previously stated the first sexual assault occurred in July. Since the prior consistent statement objectively disproved that point, the prior statement was admissible per Rule 613(c)(1), which permits introduction of a prior consistent statement to counter a charge of "faulty memory and the statement was made before that which has been charged existed or arose[.]"

With these points in mind, an examination of the trial court opinion and the record compels my conclusion that only one of the three prior consistent statements at issue was properly introduced pursuant to Rule 613. However,

---

[1] **Bond** recognized in a footnote that **Hunzer** could not be overruled by a three-judge panel, but determined that **Hunzer** is "in harmony with Rule 613. **Willis**, however, is not. We conclude that the **Hunzer** Court's reliance on **Willis** is *dicta*, and that Rule 613 and the Tender Years Act have superseded **Willis**." **Bond**, *supra* at *4 n.4.

I would find that the error in introducing the remaining two statements was harmless beyond a reasonable doubt.

Delineating the relevant dates is necessary, and I begin there. C.S., born in 1999, testified that the abuse started when she was between five and six years old, and continued through age eleven or twelve. Sometime in middle school, C.S. confided to her friend, E.L., that Appellant inappropriately touched her. C.S. did not "go into much detail with it." N.T. Jury Trial, 2/28/17, at 184. C.S. did not want E.L. to report what she said to anyone else, and E.L. did not do so. In 2014, C.S. revealed the abuse to her mother, S.B., who contacted the police. During the ensuing investigation, C.S. spoke to Detective Matthew Rush.

The three prior consistent statements at issue are: (1) the statements to E.L.; (2) the statements to C.S.'s mother; (3) the statements to Detective Rush. Preliminarily, I note that the trial court's opinion differs from its ruling at trial. While the trial court is not confined to the ruling given at trial, the trial court explicitly permitted introduction of all prior consistent statements on the basis of *Willis* and *Hunzer*. When the Commonwealth attempted to introduce the first prior consistent statement, the trial court was at first skeptical of the Commonwealth's theory.

> [COMMONWEALTH] . . . I have several cases that say when the testimony of Complainant is at the center of the case, that any prior consistent statements which she would have made to [E.L.] would be admissible to rebut the implication that her testimony was fabricated.

> . . . .

> [T]he [c]ourt has discretion to allow anticipatory prior inconsistent statements when the defense centered on attacking a witness' credibility in a way that would permit introduction –

> THE COURT: But I understand that the defense, at least at this time, is that none of this is true.

> [COMMONWEALTH]: Because the mother fabricated this. This is a statement that came before the fabrication –

> THE COURT: Where is the evidence mother fabricated?

> [COMMONWEALTH]: It's being implied through every question he's asked.

*Id*. at 180-81.

The judge declared a brief recess to review the law. When proceedings resumed, the Commonwealth cited **Willis**, and the court added a citation to **Hunzer**, remarking: "[T]he prior consistent statement may even be admitted to corroborate unimpeached testimony of a child witness at the trial court's discretion[.]" *Id*. at 182-83. Appellant later objected to the introduction of the other two prior consistent statements, and each time the trial court stated that the evidence was admissible under **Willis** and **Hunzer**.

As I have discussed, **Bond** discredits that approach. Thus, the proper inquiry is whether the prior consistent statements antedate the alleged fabrication. The trial court opinion discusses that aspect as follows.

> [Appellant] contends now that C.S. fabricated her testimony as a result of the influence of her mother, who harbored animosity towards [Appellant] from at least the time when [Appellant] took C.S. shopping for bras at Wal-Mart, when C.S. was 10[-]years [-]old. While mother may have felt this way, as we noted during

- 11 -

the trial there was not evidence presented that was sufficient to effectively charge that she had expressed these feelings such that C.S. had been influenced to fabricate allegations of sexual abuse.

. . . .

While the mother testified that she had asked on an unknown number of occasions prior to the disclosure, whether [Appellant] had been inappropriate with her, there was no evidence that mother had thereby influenced C.S. to make a false disclosure of abuse. Moreover, the timing of those inquiries is unknown. Accordingly, the point in time at which C.S. was effectively charged with fabrication or being subjected to improper influence was the period between the report to police and trial. Therefore, the hearsay statements at issue were properly considered "prior consistent statements" within the meaning of the Rule, and, all of the other requirements for admission having been satisfied, were properly admitted.

Trial Court Opinion, 10/5/17, at 10-11.

I agree with portions of this analysis. Most importantly, I agree that Appellant implied that C.S. fabricated the allegations due to the influence of C.S.'s mother, S.B. Appellant, who was the paramour of S.B., suggested throughout that S.B. harbored animosity towards Appellant as a result of that relationship. I agree that Appellant repeatedly implied that C.S. fabricated the allegations at the behest of her mother.

That said, I disagree with the trial court's emphasis on the fact that "there was no evidence that C.S.'s mother had thereby influenced [C.S.] to make a false disclosure of abuse." *Id*. at 11. I interpret this comment to hold that the party opposing the introduction of a prior consistent statement must produce proof of the corrupting motive, and to suggest that the court would have sustained Appellant's objection if he could actually prove that C.S.'s

- 12 -

mother influenced C.S. to falsely implicate Appellant. I fail to see the significance of the lack of proof as it relates to the Rule.

The need to analyze the prior consistent statements in relation to Appellant's **theory**, as opposed to whether Appellant has some proof of that theory, is illustrated by **Commonwealth v. Baker**, 963 A.2d 495 (Pa.Super. 2008). In **Baker**, the Commonwealth charged Baker for sexual crimes occurring between May 1, 2004, and December 1, 2005. On cross-examination of the victim, who was seven-years-old at the time or time of trial, counsel suggested that the victim had been told what to say at trial by her mother and the prosecutor. **Baker** therefore upheld the admission of the victim's recorded interview as a prior consistent statement, as "defense counsel's questions at the very least insinuated that [the child] had been improperly induced to fabricate her testimony by the prosecution and her mother[.]" **Id**. at 505.

The Court in **Baker** did not examine whether Baker had actual proof that the victim had been told what to say by her mother and the prosecutor. The fact that counsel insinuated that the victim was fabricating her testimony as a result of that corruption—regardless of whether such corruption actually occurred—was the relevant point. Since Baker claimed that the victim fabricated her **testimony** at trial through improper coaching, the video predated that alleged corrupting influence. Nowhere did we suggest that the

Commonwealth was permitted to introduce the statement **unless** Baker could prove that the mother or prosecution influenced the child's testimony.[2]

Viewing this case in light of what Appellant insinuated, I find that only the prior consistent statement to E.L. was admissible. For ease of discussion, I again quote the Rule:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.**
> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> > (1) fabrication, bias, improper influence or motive, or faulty memory **and the statement was made before that which has been charged existed or arose**[.]

Pa.R.E. 613(c) (emphasis added).

---

[2] In **Commonwealth v. Montalvo**, 986 A.2d 84, 96 (Pa. 2009), witness Esther Soto gave a tape-recorded statement to police. Montalvo wished to call Charles Kleber, a private investigator, who would testify that Soto informed him that the police threatened her. The trial court denied the request and our Supreme Court affirmed, emphasizing the importance of timing under Rule 613:

> At sidebar, trial counsel failed to provide the timing of Soto's statement to Kleber, and additionally failed to provide any of the circumstances surrounding Soto's prior consistent statement. Therefore, at the time of the trial court's ruling, the only facts available for consideration were that Soto told an investigator-hired by Appellant's trial counsel—that the police had threatened her. Under these circumstances, we conclude that the trial court did not abuse its discretion in excluding Kleber's testimony.

*Id*. at 96. Therefore, the proponent of the statement, not the party opposing its introduction, must establish the timing.

The statements to S.B. and Detective Rush were not made before the alleged improprieties existed. Appellant postulated that C.S. and her mother were together falsely accusing him of these crimes. Thus, C.S.'s report to her mother, in Appellant's telling, is an integral part of that conspiracy. In turn, the statements to Detective Rush, would likewise be part of their scheme. Accordingly, the statements are inadmissible.

On the other hand, I find that C.S.'s statements to E.L. are admissible, as those statements predate Appellant's allegations. If C.S. and her mother were acting in concert to implicate Appellant, then C.S.'s statement to her classmate could not possibly be part of that conspiracy. Absent some suggestion that C.S. and S.B. were so devious that they banked on E.L. ignoring C.S.'s wishes by informing the authorities—which clearly did not happen as C.S. suffered the abuse for a lengthy period of time after her disclosure to E.L.—then the revelations to E.L. clearly precede the alleged fabrication. Therefore, those disclosures were properly admitted.[3]

Although I have determined that only the prior statement to E.L. was admissible, I would further hold that the introduction of the other two statements was harmless error. As noted *supra*, harmless error exists where,

---

[3] The trial court's analysis states that prior consistent statements occurring after "the period between the report to police and trial" would be inadmissible. For the foregoing reasons, I disagree. That analysis ignores Appellant's theory that the report to the police was simply the natural culmination of their alleged conspiracy to falsely accuse him of these crimes.

*inter alia*, the error did not prejudice the defendant or was *de minimis*. A primary criticism against the introduction of prior consistent statements is that such evidence is cumulative.

> Though often stated as an axiom without rationale, the primary reasons for exclusion of evidence of prior consistent statements are the need to avoid unnecessary repetition of cumulative evidence, and the need to prevent the fabrication of evidence.
>
> . . . .
>
> The general rule of exclusion of prior consistent statements, then, is based not upon hearsay grounds but upon a general consensus that the relevance of such evidence to corroborate *unimpeached* testimony is ordinarily outweighed by the danger of fraudulent manufacture of evidence, confusion of issues, undue delay, and needless repetition of cumulative evidence.

**Willis**, **supra** at 691 (emphasis in original).

As the trial court stated, the "disclosures lacked most of the details regarding [Appellant]'s specific conduct," Trial Court Opinion, 10/5/17, at 8, and C.S. supplied far more detail in her trial testimony. **Compare Commonwealth v. Smith**, 586 A.2d 957, 964 (Pa.Super. 1991) ("The officers' testimony included detailed accounts of the incidents which were never supplied by S.L. herself, thereby greatly augmenting S.L.'s testimony. We hold that the out-of-court statements do not fall within the prior consistent statements exception to the hearsay rule."). Furthermore, the statements were cumulative of the properly-admitted consistent statement. I would therefore hold that the statements, while erroneously admitted, did not prejudice Appellant.

President Judge Emeritus Bender concurs in result.