J-S70038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FURMAN OSBORNE, | : | |
| | : | |
| Appellant | : | No. 2432 EDA 2015 |

Appeal from the PCRA Order July 17, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0803611-2004

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED OCTOBER 26, 2016**

Furman Osborne ("Osborne"),[1] *pro se*, appeals from the Order

dismissing his Petition filed pursuant to the Post Conviction Relief Act.[2, 3]

We affirm.

In its Opinion, the PCRA court set forth the relevant factual and

procedural history, which we adopt for the purpose of this appeal.  **See**

PCRA Court Opinion, 3/9/16, at 1-6.

On appeal, Osborne raises the following issues for our review:

---

[1] The PCRA court indicates that Osborne's name was previously misspelled
as "Osbourne" in the trial court and direct appeal proceedings.  **See** PCRA
Court Opinion, 3/9/16, at 1 n.1.

[2] **See** 42 Pa.C.S.A. §§ 9541-9546.

[3] Although Osborne indicates on the cover of his brief that he is appealing
from the Order "granting [him] the right to file an appeal," the contents of
his brief, as well as the date of the Order appealed from, make clear that he
is appealing from the Order dismissing his second PCRA Petition.

I. Whether [Osborne] is entitled to relief on his claim of [appellate] counsel['s] ineffective assistance for being denied a fair and adequate review of his conviction due to inaccuracies, and alterations on the certified record?

II. Whether the PCRA court erred in dismissing [Osborne's PCRA] Petition [] (filed on February 18, 2011) as his second PCRA Petition?

III. Whether [Osborne] is entitled to relief on his claim of [appellate] counsel['s] ineffective assistance for failure to raise [a] claim that [the] jury charge in reference to the date of the indictment denied [Osborne] a fair trial?

IV. Whether [Osborne] is entitled to relief on his claim of trial counsel's ineffective assistance for failure to object to the introduction of an irrelevant and prejudicial photograph of the victim with his children (Commonwealth Exhibit C-24)[,] along with the testimony of Commonwealth witnesses?

V. Whether [Osborne] is entitled to relief on his claim of trial counsel's ineffective assistance for failing to object to the questioning of [Osborne] in reference to [Osborne's] military history, prior bad act[]s, and perjury by the Commonwealth['s] prosecutor?

VI. Whether [Osborne] is entitled to relief on his claim of trial counsel's ineffective assistance for failure to object to the prosecutor's misconduct on questions that inflamed the passions of the jurors to act out of sympathy for the victim and the victim's family?

VII. Whether [Osborne] is entitled to relief on his claim of trial counsel's ineffective assistance for failing to object [to,] or request [that a] jury charge be given for[, the] prosecutor's closing arguments [] and misconduct?

VIII. Whether [Osborne] is entitled to relief on his claim of trial counsel's ineffective assistance for failure to investigate and prepare adequately for trial?

IX. Whether the PCRA court erred by denying [Osborne] an evidentiary hearing for his PCRA claim[]s of ineffective

> assistance of counsel because the[]re were material issues in dispute?

Brief for Appellant at 3 (capitalization omitted, issues renumbered for ease of disposition).

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Eight of Osborne's nine issues on appeal assert various claims of ineffective assistance of his appellate and trial counsel.

> To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must … demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted).

In his first issue, Osborne contends that his appellate counsel was ineffective for failing to pursue a claim on direct appeal that the trial court record was altered and inaccurate, thereby preventing Osborne from properly developing claims of prosecutorial misconduct, perjury, obstruction of justice and ineffective assistance of trial counsel. Brief for Appellant at 12. Specifically, Osborne asserts that, although the prosecutor read portions of Osborne's military record to the jury, his military record was never turned over to the defense or made part of the trial court record. *Id*. at 13. Osborne also claims that remarks made by the prosecutor and several witnesses were removed from the record by the court stenographer, in bad faith, and that the stenographer also deleted the audio recording of the trial. *Id*. Osborne indicates that appellate counsel "did investigate the issue with the [s]tenographer, who stated the record was complete." *Id*. at 14. However, Osborne argues, appellate counsel should not have believed the stenographer, and was ineffective for failing to raise a claim regarding the record. *Id*.

On direct appeal, Osborne raised a similar, if not identical issue, *i.e.*, that "appellate counsel should have … informed the trial court that the trial and sentencing notes of testimony are missing and/or incomplete." ***Commonwealth v. Osbourne***, 988 A.2d 726 (Pa. Super. 2009)

(unpublished memorandum at 9).[4] In ruling on the Petition, this Court addressed Osborne's claim that the record was incomplete, and summarily found no merit to the claim. *See Osbourne*, 988 A.2d 726 (unpublished memorandum at 9). Because Osborne's first claim has been previously litigated, it is not cognizable under the PCRA. *See* 42 Pa.C.S.A. §§ 9543(a)(3), 9544(a)(2); *see also Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011).

In his second issue, Osborne contends that the PCRA court should have granted an evidentiary hearing regarding his claim that the record is incomplete. Brief for Appellant at 29.

Based on our determination that Osborne's first issue, regarding the completeness of the record, is not cognizable under the PCRA, we conclude that Osborne's second issue lacks merit. *See* 42 Pa.C.S.A. §§ 9543(a)(3); *Spotz*, *supra*.

In his third issue, Osborne contends that his appellate counsel was ineffective for failing to raise a claim that the trial court erred by instructing the jury that they could convict Osborne of homicide even if they were not satisfied that he committed the crime on the particular date alleged in the

---

[4] While Osborne's direct appeal was pending, his appellate counsel sought to withdraw from representation and, accordingly, filed a Petition for Remand for the appointment of new counsel based on Osborne's claim of ineffective assistance of appellate counsel. *See Osbourne*, 988 A.2d 726 (unpublished memorandum at 8-9). In her Petition, direct appeal counsel indicated that Osborne believed that she was ineffective because she did not raise this claim in her appellate brief filed on behalf of Osborne. *See id*.

indictment.[5] Brief for Appellant at 15. Osborne asserts that the date of the murder was an essential element of the crime, and his defense counsel prepared Osborne's defense on this basis. *Id*. at 16-17. Osborne claims that by giving the challenged jury instruction, the trial court denied him notice and due process. *Id*. at 17.

In its Opinion, the PCRA court addressed Osborne's third issue and determined that it lacks merit. *See* PCRA Court Opinion, 3/9/16, at 8-9. The PCRA court's determination is supported by the record and is free of legal error. Therefore, we affirm on this basis as to Osborne's third issue. *See id*.; *see also Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa. Super. 2006) (holding that the date of the murder was not an essential element of the crime of homicide, and instructing that indictments are not to be construed in an overly technical manner).

In his fourth issue, Osborne contends that his trial counsel was ineffective for failing to object to the introduction into evidence of a

---

[5] Osborne has not included the challenged instruction in his brief. However, in its Opinion, the PCRA court set forth the instruction, as follows:

> The indictment in this case … alleges that the crime was committed on or about May 27 of 2004. You are not bound by the date alleged in the indictment. It is not an essential element of the crime charged.

> You may find [Osborne] guilty if you are satisfied beyond a reasonable doubt that he committed the crime charged in the indictment even though you are not satisfied that he committed it on the particular date alleged in the indictment.

PCRA Court Opinion, 3/9/16, at 8 (citing N.T., 11/13/06, at 162).

photograph of the victim with his children. Brief for Appellant at 17. Osborne asserts that the photograph was inflammatory and prejudicial, and that he was not given notice that the Commonwealth sought to introduce the photograph. *Id*. Osborne claims that the trial court erred by admitting the photograph, and trial counsel was ineffective for failing to raise an objection, move for a mistrial or request a cautionary instruction. *Id*.

The admission of photographs is a matter vested within the discretion of the trial court. ***Commonwealth v. Rivers***, 644 A.2d 710, 716 (Pa. 1994). The trial court will not be found to have abused that discretion unless the essential evidentiary value of the photograph is clearly outweighed by the inflammatory effect the picture will have upon the minds and passions of the jurors. *Id*.

In this case, it is not apparent that the photograph had the threshold impact of evoking sympathy for the victim in the minds or hearts of the jurors. ***See Commonwealth v. Blystone***, 549 A.2d 81, 90 (Pa. 1988). The assessment of the PCRA court was that Osborne suffered no prejudice as a result of the photograph being shown to the jury. ***See*** PCRA Court Opinion, 3/9/16, at 9. Our review of the record reveals that Commonwealth introduced the photograph through Enez Lundy ("Lundy"), the mother of three of the victim's children, who merely identified the victim and their children in the photograph. ***See*** N.T., 11/09/06, at 201. The trial court then permitted Lundy to show the photograph to the jury. ***See id***.

Nevertheless, we are mindful that in **Commonwealth v. Story**, 383 A.2d 155, 160 (Pa. 1981), our Supreme Court held that photographs of a victim and/or his family, which are irrelevant to a determination of guilt or innocence, are inadmissible. The Commonwealth's stated purpose in offering the photograph of the victim and his children was to establish that he had been a "life in being" prior to the homicide. **See** Brief for the Commonwealth at 14. However, Osborne and Lundy, as well as Deatrice Kennedy (the victim's mother), Brandi Burrell (the mother of one of the victim's children) and Niki Patton, each testified that the victim was alive shortly before his disappearance. **See Rivers**, 644 A.2d at 716 (holding that a photograph of the victim was not necessary to establish that he had been a "life in being" before the homicide where trial witnesses had established this fact). Additionally, the coroner, Bennett G. Preston, M.D., testified that the victim's death resulted from being shot 15 times. **See id**. (holding that the coroner's testimony that the victim's death resulted from the beating and stab wounds established that the victim was a life in being prior to the homicide). Thus, the existence of the victim as a life in being was clearly established through the testimony of various witnesses, and the Commonwealth did not need to introduce the photograph to establish this fact. **See id**. Moreover, the photograph was not relevant to the question of Osborne's guilt or innocence. **See Story**, 383 A.2d at 160. Therefore, we

hold that the trial court erred when it admitted the photograph into evidence.

However, our inquiry does not end with this conclusion. The question remains as to whether the error in admitting the photograph was "harmless beyond a reasonable doubt." *Story*, 383 A.2d at 164. An error is harmless when "the evidence of guilt was so overwhelming, and the error … so insignificant by comparison, that the error was harmless beyond a reasonable doubt." *Id*. at 169.

Our review of the record reflects that the evidence of Osborne's guilt, as described in the PCRA court's Opinion, was overwhelming, and that the error was insignificant by comparison. *See* PCRA Court Opinion, 3/9/16, at 2-6. Accordingly, we conclude that the error was harmless beyond a reasonable doubt, and Osborne is not entitled to relief on this claim. *See id*.

In his fifth issue, Osborne contends that his trial counsel was ineffective for failing to object to the questioning of Osborne regarding his military history, which, Osborne asserts, constitutes inadmissible prior bad acts. Brief for Appellant at 20. Osborne claims that "[t]he Commonwealth attempted [to,] and was successful at[,] painting [Osborne] as a violent[,] trained killer who had no self[-]control, nor concern for human life, and who got kicked out of the military because his violence could not be controlled." *Id*. at 21. Osborne also contends that the prosecutor committed perjury when he stated in court that Osborne had been kicked out of the military for

fighting.[6]  *Id*. at 22.  Osborne asserts that the prosecutor's remarks were made "to prejudice the jury, forming in their minds a fixed bias and hostility toward [Osborne]."  *Id*.

In its Opinion, the PCRA court noted that Osborne had failed to identify in his Concise Statement which of the prosecutor's questions were improper.  *See* PCRA Court Opinion, 3/9/16, at 9.

If an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived.  *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).  This Court may find waiver where a concise statement is too vague.  *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011).  "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."  *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001).  Accordingly, because Osborne failed to identify the specific questions that were allegedly improper, we conclude that he waived this issue.

Additionally, in his brief, Osborne failed to cite to the *specific* places in the record where such questions are located, in violation of Pa.R.A.P. 2119(c).  Osborne's general reference to a 48-page section of the notes of testimony is insufficient to satisfy our appellate rules.  *See Commonwealth*

---

[6] This statement is not in the record.  Rather, Osborne claims that this statement was removed from the notes of testimony by the court stenographer, in bad faith.  *See* Brief for Appellant at 13, 22.

*v. LaCava*, 666 A.2d 221, 234-35 (Pa. 1995) (holding that no relief was due where the defendant generally referred to 21 pages of the record in support of his argument that the prosecutor made improper comments, without specifically identifying the alleged prejudicial comments).

In his sixth issue, Osborne contends that trial counsel was ineffective for failing to object to the introduction of victim impact testimony, which caused the jury to act out of sympathy for the victim and his family. Brief for Appellant at 23-24. Osborne asserts that such testimony is inadmissible under Pa.R.E. 402 and 403, and that the prosecutor acted improperly by eliciting such testimony. *Id*. at 25. Osborne claims that such testimony violated his rights to due process and equal protection under the Constitutions of the United States and Pennsylvania. *Id*.

In its Opinion, the PCRA court addressed Osborne's sixth issue and determined that it was waived, based on Osborne's failure to identify any of the objectionable questions asked by the prosecutor. *See* PCRA Court Opinion, 3/9/16, at 9 (wherein the PCRA court noted: "[w]e have no idea what statements [Osborne] refers to and cannot guess."); *see also Dowling*, 778 A.2d at 686 (holding that "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review."). The PCRA court's determination is supported by the record and is free of legal error. Therefore, we affirm on this basis as to Osborne's sixth issue. *See* PCRA Court Opinion, 3/9/16, at 9.

- 11 -

In his seventh issue, Osborne contends that trial counsel was ineffective for failing to object to comments made by the prosecutor during closing arguments. Brief for Appellant at 26. Osborne asserts that the prosecutor "should not ask the jury to consider the outcome of the case for the victim, the victim's children, or the victim's family[,] nor suggest their interest should be to see [Osborne] convicted[,] nor tell the jury that [Osborne] is a liar[,] nor [] argue that a missing witness would have testified adversely to the defense …." *Id*. (citations to the record omitted). Osborne claims that the prosecutor's remarks were improper, and that he was prejudiced by his trial counsel's failure to object to the comments. *Id*. at 27.

In its Opinion, the PCRA court addressed Osborne's seventh issue, and noted that Osborne had failed to identify any of specific remarks made by the prosecutor which were allegedly improper. *See* PCRA Court Opinion, 3/9/16, at 10 (stating that Osborne "fails to identify exactly what comments he complains about."). As indicated above, this Court may find waiver where a concise statement is too vague. *See Hansley*, 24 A.3d at 415. Because Osborne failed to specify the allegedly improper prosecutorial comments, thereby forcing the PCRA court to speculate as to which comments he was referring to, we deem this issue waived. *See Dowling*, *supra*.

In his eighth issue, Osborne contends that his trial counsel was ineffective for failing to investigate possible eyewitnesses, including "Mr. Muhammed" and "Sharon Jones," who were mentioned by a Commonwealth witness during his trial testimony. Brief for Appellant at 27. Osborne asserts that trial counsel was aware of these witnesses, and that his failure to interview them prior to trial arguably constitutes *per se* ineffectiveness. *Id*. at 27-28. Osborne also claims that trial counsel was ineffective for (1) failing to "conduct an investigation in reference to taking photo[]s of the crime scene[;]" (2) failing to obtain phone records; (3) failing to file a motion to suppress the murder weapon; and (4) stipulating to the murder weapon at trial. *Id*. at 28.

In its Opinion, the PCRA court addressed Osborne's issue, *i.e.*, that trial counsel failed to investigate and adequately prepare for trial, and determined that the issue was waived based on Osborne's failure to identify what additional evidence or witnesses should have been presented at trial, but were not, due to trial counsel's ineffectiveness. **See** PCRA Court Opinion, 3/9/16, at 10 (wherein the PCRA court stated "significantly, in none of [Osborne's] pleadings did he provide any affidavit or certification demonstrating what additional evidence or witness[es] should have been presented."). The PCRA court's determination is supported by the record and is free of legal error. Therefore, we affirm on this basis as to Osborne's eighth issue. **See id**.; **see also Commonwealth v. Brown**, 767 A.2d 576,

582 (Pa. Super. 2001) (holding that trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense).[7]

The PCRA court also addressed Osborne's issue that trial counsel should have sought suppression of the murder weapon and should not have stipulated to the weapon at trial, and concluded that the issue was without merit on the basis that Osborne "has advance[d] no legal theory or authority to demonstrate why the evidence should have been suppressed …." PCRA Court Opinion, 3/9/16, at 10. Osborne's argument on appeal is equally undeveloped. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (explaining that an appellant waives issue on appeal where he fails to present the claim with citations to relevant authority or develop the issue in a meaningful fashion capable of review). As the PCRA court's determination is supported by the record and is free of legal error, we affirm on this basis as to Osborne's eighth issue. **See** PCRA Court Opinion, 3/9/16, at 10.[8]

---

[7] We further observe that Osborne has failed to demonstrate (1) that "Mr. Muhammed," "Sharon Jones," and other unidentified witnesses were willing and able to appear to testify on his behalf at trial; (2) the substance of the proposed testimony that these witnesses would have given; or (3) that such proposed testimony was necessary in order to avoid prejudice to Osborne. **See Commonwealth v. Treiber**, 121 A.3d 435, 454 (Pa. 2015).

[8] As Osborne's bald assertions that trial counsel failed to (1) investigate "taking photo[]s of the crime scene[;]" and (2) obtain phone records were not included in his Concise Statement, these claims are waived. **See Lord**, 719 A.2d at 309.

- 14 -

In his final issue, Osborne contends that his PCRA Petition was timely filed, and that the PCRA court erred by dismissing his Petition as untimely filed. Brief for Appellant at 12. Osborne asserts that, because his Petition was timely filed, this Court should remand the case for an evidentiary hearing on his claims. *Id*.

In its Opinion, the PCRA court notes that Osborne's Petition was timely filed, and that it inadvertently dismissed the Petition as untimely. *See* PCRA Court Opinion, 3/9/16, at 11 n.5. However, the PCRA court also determined that its dismissal Order was proper, given that all of Osborne's claims are without merit. *See id*. at 2. As we agree with the PCRA court's determination that Osborne's claims are without merit, we affirm its Order dismissing Osborne's Petition. *See Commonwealth v. Doty*, 48 A.3d 451, 456 (Pa. Super. 2012) (holding that this Court may affirm the PCRA court's order on any basis).

Order affirmed.

Judge Ott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2016

- 15 -

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP- 51 CR-0803611-2004

v.     :

FURMAN OSBOURNE[1] Appellant     :

**OPINION OF THE COURT**

**FILED**

MAR 0 9 2016

Criminal Appeals Unit
First Judicial District of PA

This is an appeal from the denial of relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §9541 *et seq*. For the reasons set forth below, this Court's Order denying relief should be affirmed

Appellant, was tried before this Court sitting with a jury. On November 14, 2006, the jury found Appellant guilty of First Degree Murder and Possessing an Instrument of Crime concerning the May 27, 2004 shooting death of Steven Kennedy. On January 22, 2007, this Court sentenced Appellant to the mandatory sentence of life imprisonment for murder and a concurrent sentence of one (1) to two (2) years imprisonment for the weapons offense. No timely direct appeal was taken following sentencing. Instead, on January 23, 2007, Appellant, *pro-se*, filed a petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §9541 *et seq*. On May 7th 2008, at the conclusion of the PCRA process, Appellant's appellate rights were reinstated.

Appellant timely filed a Notice of Appeal *nunc pro tunc*. Subsequently the Superior Court Affirmed the Judgment of Sentence. Challenges based upon the sufficiency and weight of

---

[1] We note Appellant spells his last name "Osborne" The dockets of the case at trial, on direct appeal and instantly apparently misspell it as "Osbourne."

1

the evidence were rejected on appeal. Additional claims were waived for failing preserve the issue for appeal. *Allocatur* was denied by the Supreme Court.

Appellant timely filed a *pro se* PCRA Petition. After counsel was appointed Appellant requested to proceed *pro se*. After conducting a Grazier hearing[2], this Court granted Appellant's request and permitted him to proceed *pro se*.

Appellant subsequently filed three amended/supplemental Petitions. Approximately twenty (20) claims were raised. Many were undeveloped; all were meritless. After reviewing the pleadings, the record and the law, and after complying with procedural requirements, this Court denied the petition without granting a hearing. The instant appeal followed.

This Court issued an Order pursuant to Pa.R.A.P. 1925(b) and Appellant timely filed his response. In his response Appellant abandoned many of the claims raised in his series of pleadings. We will address the remaining claims.

The evidence in this case although largely circumstantial was compelling. Deatrice Kennedy, the decedent's mother testified that as of May 2004, property located at 2019 North 19th Street in Philadelphia was owned by the decedent who used the property to house pit bulls. The decedent had known Appellant for eight or nine years at the time of his death. Appellant and Decedent were "like brothers." They worked together rehabbing the property at 2019 North 19th Street, and worked together installing alarms. Appellant owned two white vans and drove a white van every day for work. Appellant bought a cell phone for decedent to be used for their alarm installation business. Her son disappeared and Appellant's behavior immediately prior to her discovery of his disappearance and thereafter was extremely strange. For example, just prior to discovering her son's disappearance Ms. Kennedy spoke with her son who told her Appellant was coming to pick him up to go to the "North Philly" house (2019 North 19th Street in

---

[2] Commonwealth v. Grazier, 713 A. 81 (Pa. 1998).

2

Philadelphia). After that conversation Ms. Kennedy repeatedly tried, unsuccessfully to call her son. His cell phone appeared to be shut off. His body was discovered approximately ten (10) days later.

During that ten day period, Appellant called Ms. Kennedy a number of times. During the first call, when Mrs. Kennedy asked Appellant if he had seen the decedent, he told her he had to go and hung up the phone. On June 5th, Appellant called Mrs. Kennedy's husband. Appellant said he needed to get the van that he was storing at the Kennedys' vehicle storage company because he had a locksmith coming to change the locks. When they met, Appellant again acted strangely. He did not come to the car to speak to Mrs. Kennedy and said very little to Mr. Kennedy. Later that same day, Appellant called again. He told Mrs. Kennedy that the decedent's body was found on the third floor of 2019 North 19th Street. The decedent had been shot. Appellant also told her that the SPCA was shooting the dogs that the decedent kept at the property. Before hanging up the phone, Appellant told Mrs. Kennedy that he was in Atlantic City and he'd be there soon. Appellant never came to see them and did not come to His "brother's" funeral. (N.T. 11/8/06, 56-74).

Brandi Burrell, the mother of one of the decedent's children, testified that about a week prior the decedent's disappearance, Appellant spoke to Ms. Burrell on the phone. He told her the decedent had been avoiding him. Appellant "if he wanted [the decedent] killed, it wouldn't be a problem". The Appellant also told her "the first thing he would do is have [the decedent's] cell phone cut off." He also said "no one would find [the decedent]." Later she spoke with Appellant and the decedent on a three way phone conversation. Appellant and the decedent discussed meeting and going to the house at 19th Street. She was with the decedent when Appellant picked him up. She never saw the decedent again. Her calls to his phone went unanswered. The

3

morning after Appellant picked up the decedent Ms. Burrell spoke with Appellant. Appellant told her that he had just left the house on 19th Street and the decedent was still there. While the decedent was missing, Appellant asked Ms. Burrell to spend the night even though they had never been intimate before. Appellant told her the decedent had "burned him out of $200." He said the decedent would probably not make an upcoming child support hearing because the decedent had "done so much dirt to people". On the day the body was discovered Appellant called Ms. Burrell and told her he had something to tell her that he could not over the phone. He eventually told her that we was told that police were at the house on 19th Street and took a body out. He said that he did not know if it was the decedent who was killed or if he had killed someone. He also told her that the person had been shot in the chest and back and that there were still shell casings in the house. Later, Appellant received a call from a detective and Appellant told the detective he was in Atlantic City doing a job and when he was finished he would come in for questioning[3]. N.T. 11/8/06, 99-139).

Emerson Pitts testified that in May 2004, he ran a garage at 2015 North 19th Street in Philadelphia. He had seen the decedent and Appellant come to 2019 North 19th Street together from time to time. When he saw the Appellant he would come to the house in a white Chevy van with a rack on it. On May 27th, 2004, Mr. Pitts arrived at his garage around 6:30am. While he watched the news as part of his morning routine, he heard a popping sound 10 or 11 times. A few minutes later, he went outside and looked to his right up the street because that was the direction the sounds came from. 2019 North 19th Street is located to the right of Mr. Pitts' garage. Around 8am, he stepped outside to call his parts man. He saw Appellant walking from the back of his white van towards the front. He then got in the van and drove off. This was within 5 minutes after Mr. Pitts heard the popping sounds. After speaking with detectives Mr. Pitts identified

---

[3] Homicide Detective Holmes corroborated this testimony. (N.T. 11/09/2006, 88-93).

4

Appellant from a photo spread as the man he saw leaving 2019 North 19th Street on May 27th. Mr. Pitts did not see the decedent between May 27th and June 5th, the date the body was discovered (N.T. 11/6/06, 169-89).

The decedent was shot about fifteen times. He suffered two gunshot wounds to the head. The decedent also suffered three gunshot wounds to the chest. He also had three wounds to the back. There was a gunshot wound to the right leg, and also a wound to the neck. The decedent had defensive wounds to the left arm and to his hands. The cause of death was multiple gunshot wounds. Based on the rate of decomposition, the decedent had been dead for a week to a week and a half at the time of the June 6, 2004 autopsy. (N.T. 11/6/06, 216-35).

Niki Patton testified that she had known the decedent for two months prior to his death. She last saw him on May 25, 2004 and last spoke to him, via telephone, on May 26, 2004. Prior to that date she overheard a phone conversation between the decedent and Appellant. The decedent was yelling at Appellant, asking why he'd changed the locks on the house at 19th Street and why Appellant had turned the decedent's cell phone off. The decedent told Appellant he needed the cell phone back on.

Officer Beltram of the Pennsylvania SPCA, investigating abandoned dogs inside the property entered the property after obtaining a warrant and entered with the police. After three neglected dogs were removed, the police discovered the decomposing body against the far wall in the middle third floor bedroom. (N.T. 11/09/2006, 56-64). Four fired cartridge casings were recovered: three .45 caliber, which were fired from the same gun and one 9mm. Six bullets and two bullet jackets were recovered from the body of the decedent. Six bullets and one bullet jacket were 9mm caliber and one bullet jacket was .45 caliber. There was no evidence of forced entry.

5

Donald Jones testified that in May and June of 2004, he was working in a garage in the same building as the garage owned by Mr. Pitts. Although he did not know the decedent personally, he had seen him going in and out of the house at 2019 North 19th Street, When he opened his garage on May 27, he heard a "pow pow" sound. He went outside and spoke with Mr. Pitts about the sounds. As he headed back into the garage he heard more "pow pow pow pow" sounds. Mr. Jones went back outside and he saw someone come out of 2019 North 19th Street, lock the door, get in a white van, and drive off. The man drove off within ten minutes of the last gunshot. He testified that the gunshots that he heard sounded like two different guns because one set of shots sounded much louder than the other. (N.T. 11/09/06, 162-175).

Appellant testified that he last saw the decedent between 7:30 and 8 in the morning on May 27th, 2004 and denied killing him. He proffered explanations for his strange behavior including deactivating the decedent's cell phone while he was missing. He admitted that he owned two guns, a 9-mm and a .45 automatic, but said that he had given both to the decedent. On cross-examination, Appellant testified that he had been in the military and received weapons training. (N.T. 11/10/06, 202-238).

After hearing the evidence, the arguments of counsel and the law, the jury found Appellant shot and intentionally killed his friend in that third floor bedroom on the morning of May 27, 2004.

"Ineffective assistance of counsel is a mixed question of law and fact that we review *de novo*." United States v. Blaylock, 20 F.3d 1458, 1464-5 (1994). The United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 685 (1984), stated, "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment including the Counsel

6

Clause." The Supreme Court also states, "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Id. Due to the reason above, the Supreme Court has acknowledged that the right to counsel is the right to effective counsel. Id. at 686. The law presumes that counsel was effective and, therefore Appellant has the burden to show that counsel was ineffective. Commonwealth v. Baker, 614 A.2d 663, 673 (Pa. 1993).

Counsel is presumed effective and Appellant bore the burden of proving that counsel provided ineffective assistance of counsel. Commonwealth v. Rivers. 786 A.2d. 923 (Pa. 2000). The Strickland Court set out a test where a defendant would have to show that (1) his attorney's performance was unreasonable under prevailing professional standards and (2) that there is a reasonable probability that but for counsel's unprofessional errors; the result would have been different. Strickland v. Washington. at 687-90. In reviewing the PCRA, the Pennsylvania Supreme Court, in Commonwealth v. Douglas, 645 A.2d 226, 230 (Pa. 1994), stated, "To prevail on such a claim, Appellant must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his interest; and (3) that he was prejudiced by counsel's ineffectiveness." To show prejudice defendant must establish that, but for counsel's errors, the outcome of the trial would have been different. Commonwealth v. Bond, 819 A.2d 33, (Pa. 2002). Appellant's failure to satisfy all the prongs of the test should result in the dismissal of the ineffective counsel claim. Commonwealth v. Fulton, 876 A.2d 342, (Pa. 2003).

7

To be entitled to an evidentiary hearing on a claim of ineffectiveness, a defendant must "set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude ... counsel may have, in fact, been ineffective." Commonwealth v. Priovolos, 715 A.2d 420, 422 (Pa. 1998) (quoting Commonwealth v. Pettus, 424 A.2d 1332, 1335 (Pa. 1981)). As the facts presented no basis for ineffectiveness, no hearing was necessary.

Appellant's first ineffective assistance of counsel claim faults counsel for failing to pursue a claim that the trial record was inaccurate. He is wrong, as the Superior Court found. In its memorandum Opinion at p. 9-10 The Court stated, "This Court has been provided with complete copies of appellant's trial and sentencing transcripts." Accordingly, this previously litigated claim also is baseless.

Next, Appellant alleges ineffective assistance because counsel did not challenge this Court's instruction to the jury concerning the date alleged in the indictment. Specifically, at the request of the Commonwealth and in response to an incorrect statement of law in the defense closing, the Court instructed the jury, in substantially similar language to SSJI (Crim) 3.19, as follows:

> The indictment in this case, ladies and gentlemen, alleges that the crime was committed on or about May 27, 2004. You are not bound by the date alleged in the indictment. It is not an essential element of the crime charged.
>
> You may find the defendant guilty if you are satisfied beyond a reasonable doubt that he committed the crime charged in the indictment even though you are not satisfied that he committed it on the particular date alleged in the indictment.

N.T. 11/13/06, 162. The Commonwealth requested this instruction and was entitled to this instruction after defense counsel told the jury his closing that the date alleged in the indictment was an element of the crime and the Commonwealth needed to prove beyond a

8

reasonable doubt that the decedent was murdered on May 27, 2004. See N.T. 11/13/06, 51-52, 140-141.[4] Accordingly, this claim is meritless.

Next Appellant faults counsel's representation because counsel failed to challenge the introduction of certain photographs of the decedent and his children. During her testimony Ms. Lundy was permitted to identify a photograph of the decedent. The decedent's children also were in the photo and identified by name. It is clear to this Court that counsel did not object because there was no basis to object as this was a proper exercise of this Court's discretion and because Appellant suffered no prejudice from the introduction of this photo. See e.g. Commonwealth v. Mehmeti, 462 A.2d. 657 (Pa. 1983); Commonwealth v. Hernandez, 590 A.2d. 325 (Pa. Superior 1991). Accordingly, this claim, too is baseless.

Next in another undeveloped claim, Appellant faults counsel for failing to object to "the questioning of defendant in reference to the defendant's military history, prior bad act's [sic], and perjury by the commonwealth prosecutor. Although Appellant fails to allege with any specificity what questions were improper, we assume that Appellant refers to very limited questioning designed to demonstrate Appellant's familiarity and access to weapons. Clearly, evidence of Appellants' access to weapons was relevant and admissible. Commonwealth v. DeJesus, 880 A.2d. 608 (Pa. 2005); Commonwealth v. Peterkin, 513 A.2d. 373 (Pa. 1986). Accordingly, this claim, too is baseless.

Next, in an undeveloped claim Appellant alleges ineffective assistance of counsel for "failure to object to the prosecutor's misconduct on question that inflamed the passions of the jurors to act out of sympathy for the victim and the victim's family." We have no idea what statements Appellant refers to and cannot guess. We do note, however that this Court instructed

---

[4] Appellant does not fault counsel for so instructing the jury.

9

the jury, "Your determination of the facts should not be based on sympathy for or prejudice against the defendant or the victim..." N.T. 11/13/06, 144. Accordingly, this meritless claim also is waived.

In a related undeveloped claim, Appellant claims ineffective assistance of counsel for "failing to object or request jury charge be given for prosecutor's closing argument's [sic] and misconduct." Although Appellant fails to identify exactly what comments he complains about, in his pleadings he complained about certain arguments made about Appellant's possible motive for the killing. As the arguments were proper and were supported by the evidence, there was no basis to challenge the prosecutor's comments. See e.g. Commonwealth v. Bishop, 742 A.2d. 178, 187 (Pa. Superior 1999). Accordingly, this meritless claim also is waived.

Next, in another undeveloped claim Appellant faults counsel claiming he failed to investigate and adequately prepare for trial. Significantly, in none of Appellant's pleadings did he provide any affidavit or certification demonstrating what additional evidence or witness should have been presented. Accordingly, this claim also was meritless. See. e.g. Commonwealth v. Brown, 767 A.2d. 576, 584 (Pa. Superior 2001.)

Next, Appellant challenges counsel's representation alleging that counsel should have sought suppression of the murder weapon recovered by police a year after the killing and then for "stipulating to [the] weapon" and for failing to have a colloquy given" Again Appellant has advance no legal theory or authority to demonstrate why the evidence should have suppressed or why a colloquy was required. Accordingly, this claim, too is meritless.

10

Finally, Appellant alleges that the cumulative impact of these claims requires PCRA relief. As none of these issues is meritorious, no basis exists to conduct a cumulative impact analysis. See Commonwealth v. Spotz, 18 A.3d. 244, 321 (Pa. 2011). .

Accordingly, for the reasons set forth above, the Order denying PCRA relief should be affirmed[5].

BY THE COURT:

_____
ROBINS NEW, J.

---

[5] Appellant also raised challenges to this Court's Order of dismissal. We acknowledge that instead of finding the claims meritless, our Order inadvertently dismissed the claim as untimely. Appellant is correct. His Petition was timely filed. However, no prejudice occurred from this error. The appeal was timely filed. Appellant's 1925(b) statement challenges substantive findings of the PCRA Court. This Court's opinion addresses those claims.

11