J-S27004-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
THOMAS F. KELLEY :
:
Appellant : No. 455 WDA 2018

Appeal from the Judgment of Sentence March 5, 2018
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0000259-2016

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OLSON, J.:                 FILED SEPTEMBER 11, 2019

Appellant, Thomas F. Kelley, appeals from the judgment of sentence entered on March 5, 2018, following his jury trial convictions for rape of a person less than 13 years of age, statutory sexual assault, sexual assault, incest, endangering the welfare of a child, corruption of minors, indecent assault, and aggravated indecent assault.[1]  Upon review, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  On October 26, 2015, Trooper Daniel Boyd of the Pennsylvania State Police filed a criminal complaint against Appellant alleging multiple crimes involving sexual misconduct related to three minor female victims identified as B.H., T.K., and M.K.  Relevant to this appeal, the affidavit of probable cause,

_____

[1] 18 Pa.C.S.A. §§ 3121, 3122.1, 3124.1, 4302, 4304, 6301, 3126, and 3125, respectively.

_____
*   Retired Senior Judge assigned to the Superior Court.

attached to the criminal complaint, set forth the following factual allegations regarding alleged misconduct with B.H., as follows:

> During the course of the investigation, victim B.H. who has a family relationship with [Appellant], reported [] that she was raped by [Appellant] when she was [six] years old[.] B.H. indicated that she was spending the night at [Appellant's] residence and he came into the room where she was sleeping, used force to hold her down and put his penis in her vagina. [B.H.] also indicated that [Appellant] put his fingers inside of her vagina on one occasion when he was giving her a bath.

Affidavit of Probable Cause, 10/26/2015, at 1, ¶ 3. On May 26, 2016, the Commonwealth filed a criminal information setting forth 24 criminal charges against Appellant. However, the criminal information failed to include a criminal count for aggravated indecent assault, pertaining to the purported digital penetration while bathing B.H. as set forth in the above-quoted affidavit of probable cause that was bound over by the magisterial district judge at the preliminary hearing before a magisterial district judge.

On September 1, 2016, Appellant filed an omnibus pre-trial motion requesting, inter alia, that the trial court sever the criminal charges into separate trials for each victim. The Commonwealth conceded to severance and, on March 30, 2017, the trial court granted Appellant relief. This case, pertaining exclusively to victim B.H., proceeded to jury selection on October 23, 2017. Between jury selection and the start of trial, Appellant filed a motion in limine to preclude proposed Commonwealth expert witness, Mary Volkar, from testifying at trial. The trial court denied relief.

On October 31, 2017, prior to the start of trial, Appellant filed an additional pre-trial motion, seeking to preclude the Commonwealth from presenting evidence of two specific prior bad acts concerning B.H. More specifically, Appellant sought to preclude testimony regarding two separate incidents pertaining to B.H. wherein: (1) Appellant exposed himself and showered in front of the victim when she was between the ages of five and seven and (2) Appellant digitally penetrated the victim while bathing her when she was six- or seven-years-old. The trial court initially granted Appellant relief based upon the Commonwealth's failure to file a required bad acts notice under Pa.R.E. 404(b). Following a brief recess, however, the Commonwealth requested reconsideration of the Rule 404(b) decision and sought to amend the criminal information to include the offense of aggravated indecent assault. The Commonwealth asserted that Trooper Boyd previously charged the incident involving digital penetration in the October 26, 2015 criminal complaint and the offense was bound over for trial by the magisterial district judge, but it was omitted inadvertently from the criminal information. As such, the Commonwealth argued Appellant's criminal information should have included the charge of aggravated indecent assault. The trial court granted Appellant a continuance and discharged the jury.

On November 7, 2017, the Commonwealth filed notice pursuant to Pa.R.E. 404(b) that it intended to introduce evidence that Appellant exposed himself and showered in front of the victim. In response, Appellant filed another motion in limine to preclude the Commonwealth's proffered prior bad

acts evidence. The trial court granted partial relief, precluding the prior bad acts evidence from opening statements and reserving its ruling on the admissibility of specific acts at trial. On November 9, 2017, the Commonwealth amended its criminal information to include one count of aggravated indecent assault alleging Appellant digitally penetrated B.H.

A two-day jury trial commenced on November 14, 2017. At its conclusion, the jury convicted Appellant of all charges included in the amended criminal information. On March 5, 2018, the trial court sentenced Appellant to an aggregate term of 18 to 36 years of imprisonment, followed by 10 years of probation. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

1. [Whether t]he trial court erred in allowing the [Commonwealth] [to use an irrelevant and prejudicial] photo[] of the alleged victim as a child [during opening statements?]

2. [Whether t]he [trial] court erred in allowing the Commonwealth to present testimony of [Appellant's] prior bad acts, the subject matter of which did not qualify for a permitted use under Pa.R.E. 404(b), and without providing reasonable notice in advance of trial to the defense[?]

3. [Whether t]he [trial] court erred in denying [Appellant's] motion in limine to preclude or limit the expert testimony of Mary Volkar[?]

_____

[2] Appellant filed a notice of appeal on March 28, 2018. On April 4, 2018, the trial court filed an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After securing an extension from the trial court, Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 3, 2018.

4.  [Whether t]he [trial] court erred in denying defense counsel's objection to questions relating to [Appellant's] marital history[?]

5.  [Whether t]he [trial] court erred in denying [Appellant's] request for the "hypothetical question" jury instruction regarding expert Mary Volkar's testimony[?]

6.  [Whether t]he [trial] court erred in allowing the Commonwealth to amend the criminal information on the eve of trial[?]

Appellant's Brief at 7 (superfluous capitalization omitted).[3]

Appellant's first four issues concern the publication and admission of evidence at trial. Our standard of review regarding such claims is well-settled:

> This Court evaluates the admission of evidence by an abuse of discretion standard. An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, or ill-will, as shown by the evidence of record.

Commonwealth v. Brown, 200 A.3d 986, 990 (Pa. Super. 2018) (internal citations omitted).

In his first issue presented, Appellant argues the trial court erred by allowing the Commonwealth to display, during its opening argument, a "poster-sized photograph" depicting the victim when she was six years old. See Appellant's Brief at 13-15. Appellant contends that he "objected to the use of the photo and argued that it was more prejudicial than probative, making it inadmissible evidence[,]" but the trial court erroneously overruled his objection. Id. at 13. Moreover, Appellant argues that because the

_____

[3] We have reordered Appellant's issues for ease of discussion.

photograph was not subsequently entered into evidence and because he objected to its relevance, the trial court failed to abide by our Supreme Court's directives in Commonwealth v. Parker, 919 A.2d 943 (Pa. 2007). Id. at 14. As such, Appellant argues:

> The enlarged photo of the victim as a child served no purpose but to influence the jury and predispose the jury to find the accused guilty of the crimes charged. The argument that the photo was used to prove [Appellant's] age at the time of the incidents was pretext, especially given the fact that the photograph was never offered into evidence. There was nothing apparent from the photograph that would connect it to the crimes charged or place them in the same time period. The photograph was used to inflame the passions of the jury by showing them an adorable young child juxtaposed with the description of disgusting incidents of abuse. Its use was unfairly prejudicial, which outweighed any probative value of the photo.

Id. at 15.

> Initially, we note that the trial court determined:

> At the close of evidence, no request for a limiting instruction regarding the photo used in the Commonwealth's opening statement was made. Neither party raised the issue that the Commonwealth had neglected to formally authenticate and offer the photograph into evidence.

Trial Court Opinion, 8/3/2018, at 13.

Because Appellant failed to object or raise the issue before the trial court, Appellant has waived his present challenge to the Commonwealth's display of the victim's photograph during opening statements. See Commonwealth v. Poplawski, 130 A.3d 697, 728 (Pa. 2015), citing

Pa.R.A.P. 302 (preservation of issue must be made with a timely and specific objection; appellant may not raise an issue for the first time on appeal).

Additionally, we reject Appellant's reliance on our Supreme Court's decision in Parker. In Parker, our Supreme Court examined whether it was error to display a handgun to the jury during opening statements, when the prosecution later admitted the handgun into evidence during trial. Our Supreme Court stated:

> The purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence. [Our Supreme Court has] acknowledged that as a practical matter the opening statement can often times be the most critical stage of the trial, because here the jury forms its first and often lasting impression of the case. The prosecution, as well as the defense, is afforded reasonable latitude in presenting opening arguments to the jury. Such latitude is not without limits.
>
> A prosecutor's statements must be based on evidence that he plans to introduce at trial, and must not include mere assertions designed to inflame the jury's emotions. A prosecutor's opening statements may refer to facts that he reasonably believes will be established at trial.
>
> [...N]o statute, rule of procedure, or case law in Pennsylvania specifically precludes a prosecutor from displaying a tangible piece of evidence to the jury during an opening statement as long as that evidence will eventually be admitted without objection. [Our Supreme Court saw no reason] to create a rule barring tangible pieces of evidence from being displayed during an opening statement []. Indeed, where the tangible piece of evidence falls within the scope of material the prosecutor intends to introduce at trial and its display during the opening argument does not inflame the passions of the jury, the display of that piece of evidence is wholly proper. Accordingly, [there was no abuse of discretion in] allowing the prosecutor to display to the jury a tangible piece of evidence [] where the evidence was within the

scope of the evidence the prosecutor intended to introduce at trial, and where there was no question as to its admissibility.

Commonwealth v. Parker, 919 A.2d 943, 950 (Pa. 2007) (internal citations and quotations omitted).

Moreover, the Parker Court noted:

To be clear, however, permission from the trial court to display a piece of tangible evidence during a prosecutor's opening statement will not serve as a license to display tangible evidence in any way that prosecutor sees fit. While nothing prohibits a prosecutor from displaying admissible evidence, the manner by which the prosecutor conducts the display may itself constitute prosecutorial misconduct or result in a mistrial. For instance, where the display goes beyond permissible oratorical flair, is done in a flamboyant, erratic, or frightening manner, or where the prosecutor effectively converts himself into an unsworn witness, such actions may well result in a mistrial. By way of example, see People v. Williams, 90 A.D.2d 193, 196, 456 N.Y.S.2d 1008, 1010 (N.Y.A.D.1982). In Williams, the concealability of a gun was at issue. To demonstrate that it was possible to hide the gun, the prosecutor hid the sawed-off shotgun under his clothing and pulled it out during his opening statement. The Supreme Court of New York, Appellate Division found this reversible error, holding that the demonstration converted the prosecutor into an unsworn witness. That court concluded that the prosecutor's actions created a substantial likelihood that prejudice resulted that could never be dispelled from the minds of the jury. Id.

Id. at 953 n.9.

In this case, the trial court determined:

[T]he Commonwealth intended to introduce evidence that B.H. was repeatedly sexually assaulted by her uncle, [Appellant], when B.H. was between the ages of six (6) and nine (9). A photo depicting how she appeared at those ages is within the scope of material the Commonwealth intended to prove at trial.

Trial Court Opinion, 8/3/2018, at 11. Upon review, while the Commonwealth did not authenticate or enter the photograph into evidence, we agree that the

photograph was within the scope of material the Commonwealth intended to prove at trial.[4]

Moreover, we have stated:

Since a photograph is simply a type of demonstrative evidence, Commonwealth v. Serge, 896 A.2d 1170, 1177 (Pa. 2006), it, like all other types of evidence, is subject to general relevancy principles. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

Commonwealth v. Vucich, 194 A.3d 1103, 1107 (Pa. Super. 2018).

Generally, a court conducts a two-part test to determine whether to admit photographs:

First, the court must determine whether the photograph is inflammatory. This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant. Next, if the trial court decides the photo is inflammatory, in order to permit the jury to view the photo as evidence, it must then determine whether it is has essential evidentiary value.

Id. (citations omitted).

Recently, in Vucich, our Court was asked to decide whether the trial court erred by allowing the admission of two photographs depicting a minor sexual assault victim when he was between the ages of nine and eleven, the age he was at the time of the alleged crimes. By the time of trial, the victim in Vucich was twenty-years-old. The photographs were introduced into

_____

[4] Appellant does not challenge the Commonwealth's assertion that the photograph was taken during the time of the abuse.

- 9 -

evidence during the testimony of the victim's mother. Vucich argued that "the photographs were legally irrelevant and therefore inadmissible." Vucich, 194 A.3d at 1107. The trial court determined that "[t]he two pictures introduced by [the victim]'s mother helped the jury to picture [the victim] as a child so that the jury could better evaluate his testimony." Id. On appeal in Vucich, a panel of this Court disagreed. We stated:

> The connection between viewing depictions of a witness as a child and how those photographs can assist in the evaluation of the victim's in-court testimony is questionable. The parties have not supplied us with any citation to a Pennsylvania authority addressing the introduction of a photograph under these circumstances, where a victim testifies long after the commission of the crimes. However, numerous cases have addressed the related context of introducing photographs of a homicide victim.

Id. at 1108. The Vucich Court, examining Commonwealth v. Story, 383 A.2d 155 (Pa. 1978) and Commonwealth v. Rivers, 644 A.2d 710 (Pa. 1994), recognized that the use of a photograph of a homicide victim (taken when they were alive) to show at trial that they were once "a life in being" is clearly irrelevant as there is no dispute that they were alive prior to the discovery of the body. Id. However, we also noted in Vucich that in Commonwealth v. Smyrnes, 154 A.3d 741 (Pa. 2017), our Supreme Court held that a photograph of the homicide victim when she was alive "was relevant, since its evidentiary purpose had some connection to the Commonwealth's case-in-chief." Vucich, 194 A.3d at 1109. In Smyrnes, the victim was scalped and our Supreme Court determined that a photograph depicting her normal hairstyle was corroborative of testimony regarding the

torture she endured preceding the murder. The Smyrnes Court "recognize[d] that it was by no means essential to the prosecution to place this photograph before the jury [and] caution[ed] the Commonwealth concerning the value of restraint in scenarios involving potential prejudice connected with such non-essential evidence." Id., citing Smyrnes, 154 A.3d at 754.

Based upon the foregoing, the Vucich Court ultimately determined:

There are obvious parallels between the Commonwealth's seeking to establish through photographic proof what a homicide victim looked like around the time of his or her death, and the facts sub judice, in which the Commonwealth sought to show the victim's appearance near the time of the crimes. Just as such evidence is generally irrelevant in a homicide prosecution—at least in cases where the "life in being" element is not in question—so too were [the victim's] childhood pictures irrelevant, as [Vucich] did not contest that [the victim] was actually a child at the times he testified that the abuse occurred. There was thus no need to prove to the jury what [the victim] looked like as a child, rendering the evidence irrelevant.

We further disagree[d] with the Commonwealth's assertion that the evidence was relevant because the photographs were necessary to visually depict his appearance at the time the crimes occurred. It is undeniable that, due to the passage of time in this case, photographs or some other type of demonstrative evidence were indeed necessary to establish [the victim's] appearance at the time of the crimes. The Commonwealth's argument, however, beg[ged] the question by assuming that the victim's visual appearance at the time of the crimes needed to be established in the first place. Pursuant to the principles in Story and its progeny, we conclude[d] that the photographs were irrelevant, and therefore inadmissible.

       \*        \*        \*

[However, w]e [found] that any prejudice was de minimis and therefore the error was harmless beyond a reasonable doubt. There [was] a natural overlap between what the photographs show[ed] and how the prosecution use[d] the photographs, and any resulting prejudice. In Story, our Supreme Court noted that

the photographs were introduced along with testimony of the victim's family status and other events of a personal nature. [In Vucich], as the Commonwealth note[d], the photographs were referenced briefly, and the prosecutor did not revisit or otherwise draw attention to the photographs following their introduction. [Those] circumstance[s were] more akin to Rivers, in which our Supreme Court concluded that introducing the victim's photograph was harmless beyond a reasonable doubt[.]

*         *         *

Therefore, while the photographs were irrelevant [in Vucich], their use was limited, and, according to the parties' descriptions of the items, the exhibits simply depicted [the victim's] general appearance at the time of these crimes. While improperly introduced, we conclude[d] that any prejudicial effect was de minimis.

Related to this point, [we also noted] one obvious distinction between the scenarios in the examined homicide cases and [] circumstances [related to sexual abuse of a minor]. In a homicide prosecution, but for the introduction of demonstrative evidence of the victim, the jury will have no frame of reference for the victim's appearance. In contrast, the jury [is] obviously aware of the fact that [the sexually abused victim] was once a child, and it takes no great leap of imagination to imagine what a witness may have looked like as a child. This point further highlights the de minimis prejudice.

Finally, we briefly note[d] that our [Vucich] decision [was] limited to [its] factual circumstances, wherein the photographs were displayed for no purpose other than establishing [the victim's] appearance at the time of the crimes. We [did] not hold[, however,] that the appearance of a child victim is per se irrelevant. Cf. State v. Klein, 593 N.W.2d 325, 327 (N.D. 1999) (finding that photograph depicting twelve-year-old victim at age six, when the molestation occurred, was relevant; further noting that the photo "permitted the jury to see what [the victim] looked like at the age of six when he asserted he had been deathly afraid of Klein, as opposed to his appearance at the trial when he was twelve years old and testified he was no longer afraid of Klein").

Vucich, 194 A.3d at 1109–1111 (quotations and most citations omitted).

In this case, while the photograph of the victim at issue was never admitted into evidence,[5] the holding in Vucich is instructive. Despite the irrelevance of the photograph of the victim as a child, the jury was obviously aware of the fact that she was once a child and the prejudice to Appellant was de minimis and harmless. Moreover, the Commonwealth's limited use of the photo at issue herein was even less prejudicial than in Vucich because the Commonwealth did not introduce it into evidence and, thus, the jury only saw it briefly during opening statements.

Finally, we note that the trial court instructed the jury that, "[o]pening statements are not evidence." N.T., 11/14/2017, at 13. The trial court further instructed the jury that, "[a]rguments by their very nature are not evidence." N.T., 11/15/2017, at 2. "It is well settled that the jury is presumed to follow the trial court's instructions." Commonwealth v. Cash, 137 A.3d 1262, 1280 (Pa. 2016).

Based upon the foregoing, we conclude that Appellant waived his challenge that the Commonwealth did not properly enter the photograph of the victim, shown during opening statements, into evidence. Regardless, we conclude that there is no merit to Appellant's claim. Demonstrative evidence may be used during opening statements where that evidence was within the scope of the evidence to be introduced at trial. Moreover, any prejudice to

_____

[5] Appellant does not challenge the authenticity of the photograph at issue. He claims only that the photograph was unfairly prejudicial.

Appellant was harmless and de minimis. As such, there is no merit to Appellant's first issue.

Next, Appellant contends that the trial court erred by allowing the Commonwealth to present testimony of Appellant's prior bad acts. Appellant's Brief at 15-17. More specifically, Appellant challenges the Commonwealth's presentation of "evidence that [Appellant] forced the victim to observe him showering." Id. at 16. Appellant argues that the Commonwealth only gave him six days' notice that it was proposing to use the aforementioned prior bad act at trial and "[t]here was no good cause shown for the delay in giving notice of the prior bad act evidence." Id. at 17. Thus, Appellant maintains that, "[t]he trial court abused its discretion in allowing the Commonwealth to present this evidence and it was harmful and prejudicial to [Appellant]." Id.

This Court has recently stated:

Generally, character evidence is not admissible to prove conduct. Pa.R.E. 404(b).

Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes

* * *

(b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b)(1)-(b)(3). There are limited exceptions to the admission at trial of evidence of other crimes or prior bad acts. Id.; Commonwealth v. Young, 989 A.2d 920, 924 (Pa. Super. 2010).

One such exception arises in the prosecution of sexual offenses. Evidence of prior sexual relations between defendant and his…victim is admissible to show a passion or propensity for illicit sexual relations with the victim. This exception is limited, however. The evidence is admissible only when the prior act involves the same victim and the two acts are sufficiently connected to suggest a continuing course of conduct. The admissibility of the evidence is not affected by the fact that the prior incidents occurred outside of the statute of limitations.

Id. (emphasis in original). Evidence that provides the factfinder with the res gestae, or complete history, of a crime holds special significance. Commonwealth v. Wattley, 880 A.2d 682, 687 (Pa. Super. 2005), appeal dismissed, 924 A.2d 1203 (Pa. 2007).

[T]he trial court is not…required to sanitize the trial to eliminate all unpleasant facts from…consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.

Res gestae evidence is of particular import and significance in trials involving sexual assault. By their very nature, sexual assault cases have a pronounced dearth of independent eyewitnesses, and there is rarely any accompanying physical evidence…. [In these] cases the credibility of the complaining witness is always an issue.

Id. (emphasis in original) (internal citations and quotation marks omitted).

Commonwealth v. Adams-Smith, 209 A.3d 1011, 1020–1021 (Pa. Super.

2019).

Regarding notice of prior bad acts evidence:

> In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. Pa.R.E. 404(b)(4). The purpose of this rule "is to prevent unfair surprise, and to give the defendant reasonable time to prepare an objection to, or ready a rebuttal for, such evidence." Pa.R.E. 404, cmt. However, there is no requirement that the "notice" must be formally given or be in writing in order for the evidence to be admissible. Commonwealth v. Mawhinney, 915 A.2d 107, 110 (Pa. Super. 2006).

Commonwealth v. Lynch, 57 A.3d 120, 125–126 (Pa. Super. 2012).

Here, there is no dispute that, six days before trial, the Commonwealth gave Appellant Rule 404(b) notice of its intention to introduce evidence that Appellant showered in front of the victim. Hence, Appellant received pre-trial notice of the Rule 404(b) evidence that would be introduced. Moreover, Appellant does not explain how he was prejudiced or otherwise unfairly surprised. Defense counsel cross-examined the victim about the alleged incident at trial. See N.T., 11/14/2017, at 59-60. Based upon all of the foregoing, we conclude that the Commonwealth's Rule 404(b) notice was reasonable.

Moreover, we discern no abuse of discretion or error of law in permitting the Commonwealth to introduce the prior bad act evidence at trial. The prior bad act evidence involved the same victim, suggested a continuing course of conduct, and showed a passion or propensity for illicit sexual relations with the victim. The proffered evidence provided the jury with the res gestae, or

the complete history, of the crimes against the victim. Hence, Appellant is not entitled to relief on his second claim as presented.

In his third issue presented on appeal, Appellant claims that the Commonwealth's expert on sexual violence, Mary Volkar "bolster[ed] the testimony of the victim by offering the opinion that the victim should be trusted, which is not admissible" under 42 Pa.C.S.A. § 5920. Appellant's Brief at 18.

This Court has previously determined:

The admission of expert testimony is a matter of discretion [for] the trial court and will not be remanded, overruled or disturbed unless there was a clear abuse of discretion. Expert testimony is permitted as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Conversely, expert testimony is not admissible where the issue involves a matter of common knowledge.

42 Pa.C.S.A. § 5920 provides as follows:

§ 5920. Expert testimony in certain criminal proceedings

   (a) Scope.—This section applies to all of the following:

      (1) A criminal proceeding for an offense for which registration is required under Subchapter H of Chapter 97 (relating to registration of sexual offenders).

      (2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).

   (b) Qualifications and use of experts.—

      (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or

- 17 -

victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S.A. § 5920 (footnote omitted).

Commonwealth v. Carter, 111 A.3d 1221, 1222–1223 (Pa. Super. 2015). Our Supreme Court has held that "[e]xpert testimony on relevant psychological factors … does not directly speak to whether a particular witness was untrustworthy, or even unreliable, as the expert is not rendering an opinion on whether a specific witness [testified accurately.] … Rather, such testimony teaches—it provides jurors with education by which they assess for themselves the witness's credibility." Commonwealth v. Smith, 206 A.3d 551, 561 (Pa. Super. 2019), citing Commonwealth v. Walker, 480, 92 A.3d 766, 784 (Pa. 2014).

Here, there is no dispute that Ms. Volkar was qualified, pursuant to Section 5920, to testify as an expert on the dynamics of sexual violence and victim responses to sexual violence. See N.T., 11/14/2017, at 98. Ms. Volkar testified about the "reasons why young people do not come forward after

- 18 -

being sexually assaulted." Id. at 101. She expounded upon some of the reasons why a child sexual abuse victim may delay in reporting. Id. at 101-108. The certified record, however, confirms that Ms. Volkar did not testify specifically regarding the victim in this case and did not offer an opinion as to whether the alleged incidents actually occurred. She did not offer any opinion regarding the victim's credibility. Hence, under Section 5920, Ms. Volkar's testimony was properly admitted. As such, there is no merit to Appellant's third appellate issue.

Next, Appellant claims that the trial court erred by allowing the Commonwealth to cross-examine him about his marital status. Appellant's Brief at 21. In sum, he argues:

> It was apparent from the testimony that [Appellant] was married to his wife throughout the time period in question. The Commonwealth [] used pretext when asserting that the relevance of the question regarding [Appellant's] marital status was whether he was married at the time of the incident. That fact was already established. The only credible reason for eliciting information with such a question was to show that [Appellant] was subsequently divorced, which is irrelevant and prejudicial. The trial court abused its discretion in overruling [Appellant's] objection to this line of questioning.

Id.

Appellant, however, does not cite any relevant legal authority to support this proposition. "We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review." Commonwealth v. Plante, 914 A.2d 916, 924 (Pa. Super. 2006); see also Pa.R.A.P. 2119(a).

Assuming arguendo that Appellant did not waive this issue, it is otherwise without merit. Upon review of the record, Appellant testified on direct examination that there were numerous people living in the household at the time of the incidents. N.T., 11/14/2017, at 133. Appellant testified that he was not the primary caregiver of the victim and that the victim's grandmother, mother, and Appellant's "ex-wife [] usually did those jobs." Id. at 132. Appellant claimed that his wife was possibly present in the household at the time of the incidents. Id. at 138. On cross-examination, the Commonwealth asked Appellant when he separated from his wife. Id. at 145. Appellant testified that they separated in 2003 or 2004, seven or eight years after the victim alleged the abuse occurred. Id. at 146-147.

"[T]he scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion." Commonwealth v. Leaner, 202 A.3d 749, 781 (Pa. Super. 2019). Additionally, this Court has stated:

> One who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase "opening the door"… by cross examination involves a waiver. If [an appellant] delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.
>
> Commonwealth v. Stakley, 365 A.2d 1298, 1299–1300 (Pa. Super. 1976)[; s]ee also Commonwealth v. Patosky, 656 A.2d 499, 504 (Pa. Super. 1995), appeal denied, 668 A.2d 1128 (Pa. 1995) (holding when defendant delves into what would have been objectionable testimony on Commonwealth's part, Commonwealth can probe into objectionable area);

Commonwealth v. Bey, 439 A.2d 1175, 1178 (Pa. Super 1982) (holding where defendant opens door to what otherwise might be objectionable testimony, Commonwealth may probe further to determine veracity of statement).

Commonwealth v. Harris, 884 A.2d 920, 928 (Pa. Super. 2005).

In this case, the trial court determined that exploration of Appellant's marital status was proper on cross-examination by the Commonwealth because Appellant "testified that his wife may have been present when the sexual assault upon [the victim] were alleged by her to have been perpetrated." Trial Court Opinion, 8/3/2018, at 20. As such, it was proper to allow the Commonwealth to probe further to determine the veracity of Appellant's statement that his wife may or may not have been present at the relevant times. As such, we discern no abuse of discretion or error of law by the trial court and Appellant's claim regarding questioning about his marital status, while woefully undeveloped in his appellate brief, also lacks merit.

Next, Appellant asserts that the trial court erred by denying his request for the "hypothetical question" jury instruction regarding Ms. Volkar's expert testimony. Appellant's Brief at 18-21. Appellant argues that the Commonwealth asked "Ms. Volkar to assume a situation that might arise following a sexual assault and to give an opinion about whether that situation comport[ed] with reality." Id. at 19. Accordingly, Appellant argues that he was entitled to "the instruction on hypothetical questions, as it would have guided the jury to question whether the assumed facts had been proven in

order to determine what value and weight to give the expert witness's opinion." Id. at 21.

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." Commonwealth v. Baker, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted). To preserve a challenge to the adequacy or omission of a particular jury instruction, the defendant must make a specific and timely objection at trial before the jury deliberates. Commonwealth v. Smith, 206 A.3d 551, 564 (Pa. Super. 2019); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). "[I]n the criminal trial context, the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." Commonwealth v. Hitcho, 123 A.3d 731, 756 (Pa. 2015) (internal quotation marks and citation omitted). Furthermore, "a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions

or corrections to a jury charge are necessary." Commonwealth v. Moury, 992 A.2d 162, 178 (Pa. Super. 2010).

Here, Appellant requested a hypothetical question jury instruction at the charging conference. See N.T., 11/14/2017, at 123-124. However, Appellant did not object, on the record, to the trial court's preclusion of a jury instruction on hypothetical questions. See N.T., 11/14/2017, at 176-177; N.T., 11/15/2017, at 41-42. Appellant's mere mention of his requested instruction at the charging conference is not a timely, specific objection. Appellant had other opportunities to raise his objection before the jury retired, but he did not. See Moury, 992 A.2d at 178. Thus, we find Appellant waived his fourth issue.

Finally, in his last appellate issue presented, Appellant contends that the trial court erred by allowing the Commonwealth to amend the criminal information on the eve of trial. Appellant's Brief at 21-23. More specifically, Appellant argues that it was error to allow the Commonwealth to amend the criminal information to include count 25, aggravated indecent assault pursuant to 18 Pa.C.S.A. § 3125(8), regarding "an incident of digital penetration while bathing." Id. at 21-23. Appellant acknowledges that Trooper Boyd originally included two counts of aggravated indecent assault pursuant to another subsection of Section 3125, 18 Pa.C.S.A. § 3125(1),[6] at

_____

[6] The aggravated indecent assault statute, 18 Pa.C.S.A. § 3125 provides, in relevant part, as follows:

counts 16 and 17 within the original criminal complaint filed on October 26, 2015, but the Commonwealth did not include those charges in the subsequent criminal information. Id. at 23. Appellant avers that those original counts from the criminal complaint did not specify the facts supporting the charges, stating only that "on or about said date, [Appellant] did engage in penetration, however slight, of the genitals or anus of a complainant [] with part of the actor's body for a purpose other than good faith medical, hygienic or law enforcement procedures, and did so without the complainant's consent in violation of Section 3125(a)(1) of the PA Crimes Code." Id., citing Criminal Complaint at 9. As such, Appellant argues that he was not given the factual basis for the amended charge and was not on notice regarding the alleged criminal conduct at issue. Id. at 23.

_____

(a) Offenses defined.--Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

(1) the person does so without the complainant's consent;

* * *

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3125(a).

We have previously determined:

[W]hen presented with a question concerning the propriety of an amendment, we consider:

[w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. Additionally, [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

In re D.G., 114 A.3d 1091, 1094–1095 (Pa. Super. 2015) (internal citations omitted).

Here, the trial court determined that amending the criminal information to include one count of aggravated indecent assault under 18 Pa.C.S.A. § 3125(8) was proper because "the facts underlying the amendment was well known to [Appellant] and his counsel." Trial Court Opinion, 8/3/2018, at 22. The trial court examined the affidavit of probable cause attached to the criminal complaint and recognized that Trooper Boyd, the investigating officer in this matter, recounted that B.H. told him that "[Appellant] penetrated her vagina with his fingers" and "put his fingers inside her vagina on one occasion when he was giving her a bath." Id., citing Affidavit of Probable Cause, 10/26/2015, ¶¶ 2-3. Moreover, the trial court noted that the Commonwealth established a prima facie showing for the amended charge at Appellant's preliminary hearing. Trial Court Opinion, 8/3/2018, at 22. Thus, the trial court permitted the Commonwealth to amend the criminal information.

Trooper Boyd initially charged Appellant with two counts of aggravated indecent assault pursuant to Section 3125(a)(1), which pertains to a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures without the complainant's consent. (emphasis added). Whereas, the Commonwealth amended the information to charge Appellant under Section 3125(8) which applies to a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures if the

complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other. (emphasis added).

Upon review, we discern no abuse of discretion or error of law in permitting the Commonwealth to amend the criminal information. Appellant was well aware of the factual allegations against him in 2015, as set forth in the affidavit of probable cause. Moreover, he does not dispute the trial court's determination that the Commonwealth established a prima facie case for aggravated indecent assault at the preliminary hearing, well in advance of trial. As such, Appellant was on notice regarding his alleged criminal conduct. The amendment merely permitted the Commonwealth to charge Appellant under a more appropriate subsection of Section 3125(a), Section 3125(a)(8) (complainant is less than 16 years of age)[7] rather than Section 3125(a)(1) (without consent). Accordingly, Appellant's final claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2019

_____

[7] There is no dispute that the victim was under 16 years of age at the time of the incidents.